**In re ORICK.**

[Cite as *In re Orick,* 182 Ohio App.3d 333, 2009-Ohio-2097.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–08–06.

Decided May 4, 2009.

</div>

John A. Poppe for Bryant S. Orick, appellant.

Andrew J. Hinders, Mercer County Prosecuting Attorney, for the state of Ohio, appellee.

WILLAMOWSKI, Judge.

{¶ 1} Defendant-appellant Bryant S. Orick ("Orick") brings this appeal from the judgment of the Court of Common Pleas of Mercer County, Juvenile Division, finding him to be delinquent. For the reasons set forth below, the judgment is reversed.

{¶ 2} On September 25, 2007, Orick went to the home of the victim's aunt. Orick claims that the victim invited him. The victim claims that Orick came on his own. During the visit, Orick inserted a finger into the vagina of the victim. He claims that the act was consensual. She claims it was not. Orick was eventually charged as a juvenile, and a hearing was held on May 8, 2008. At the hearing, a great deal of inconsistent testimony was presented. No denial of the sexual activity occurred. The only issue before the trial court was whether the act was consensual. The trial court found that the act was not consensual and found Orick to be delinquent. On June 2, 2008, a dispositional hearing was held. On June 24, 2008, the trial court entered its order sentencing Orick to one year in the custody of the Ohio Department of Youth Services. If Orick were accepted into a sex-offender treatment program, his remaining sentence would be suspended. Orick was accepted into the treatment program on July 29, 2008, and his sentence was suspended. Orick also filed a timely appeal from the finding of delinquency and raises the following assignments of error.

## ASSIGNMENT OF ERROR NO. I

The trial court erred when it found the child to be a juvenile delinquent without making findings of facts to support the decision which was against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR NO. II

The court erred when it limited cross-examination of the witness-victim on the material issue of credibility of that witness.

{¶ 3} In the second assignment of error, Orick raises an issue concerning his right to cross-examine a witness. This court notes again that the sole issue before the trial court was one of consent. Thus, the decision is entirely one of credibility: whose testimony does the trial court find to be more believable. Specifically, Orick's attorney attempted to ask (1) if the victim knew how Orick knew where she would be that day since she was not at her own home; and (2) if she tried to defend herself. The constitutional right to cross-examine a witness includes the right to impeach that witness's credibility. *State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253. "Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility." *State v. Foust,* 2d Dist. No. Civ.A. 20470, 2005-Ohio-440, 2005 WL 281165, ¶ 13. The denial of full and effective cross-examination of a witness who is responsible for identifying the defendant as the perpetrator is the denial of a fundamental right to confront the witness. *State v. Hannah* (1978), 54 Ohio St.2d 84, 8 O.O.3d 84, 374 N.E.2d 1359. However, the trial court has the right to reasonably limit cross-examination of a witness to prevent harassment of the witness. *Foust* at ¶ 14. "It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice." Id.

{¶ 4} In this case, the victim claimed that the act was nonconsensual. However, the details of what happened and how it occurred changed frequently depending on who her audience was.[1] There was a question as to how Orick knew where the victim would be that afternoon, as she was not at her own home. Orick testified that the victim had invited him to the home. His friend testified that he overheard the conversation during which the victim did invite Orick to the home. The victim testified that she did not invite him and did not tell him where

---

1. At one time, the victim claimed that she had opened the door to the home, and Orick had forced his way into the residence. At a different time, she claimed that she was sitting on the floor of the kitchen and he was there without her knowing how he had entered. A second major discrepancy involved where she was during the incident—i.e., standing pushed against the wall, lying on the floor, or standing in the middle of the room.

she was. Orick's attorney wished to ask her if she knew how Orick would know that she would be at her aunt's home rather than her own. The question was overruled as being speculative because she could not know what Orick knew. However, she was asked if she knew, not how Orick knew. She easily could have answered yes, she knew or no, she did not. The question, because it asked for her knowledge, was not speculative, and the trial court erred in overruling it.

█ {¶ 5} The second question Orick asked was whether she did anything to defend herself. The state objected, stating that she did not have to prove that she defended herself. The trial court then sustained the objection based upon the rape shield law, R.C. 2907.02(D).

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D). The statute does not prohibit questioning the victim concerning her actions in the specific instance in question that may or may not support her claim that the act was not consensual. Thus, the trial court erred in finding that the rape shield law prohibited the question.

█ {¶ 6} The state argues that the question should be prohibited because the victim has no duty to defend herself. This court agrees with the statement that the victim had no duty to prove she attempted to defend herself. In fact, R.C. 2907.02(C) specifically states that the victim need not prove that she physically resisted. However, in this instance, the question before the trial court was one of consent. Orick claimed that the victim instigated the act and did not try to stop him. The victim claims she did not want Orick to touch her. Orick should be allowed to question the victim about her actions, including what she did, if anything, to stop him. This questioning is not the same as requiring her to prove that she fought him, but rather is a question to determine whether she consented.[2] This question was asked to impeach her credibility, and impeaching her credibility is permissible.[3] Additionally, this was a trial to the court which

---

**2.** Although the dissent notes that the victim had already testified to what happened, that was on direct examination. The defense has a right to ask questions concerning her prior testimony on cross-examination. To follow the logic of the dissent would be to presume that no witness changes her testimony during cross-examination.

**3.** The dissent claims that pursuant to *State v. Gardner* (1979), 59 Ohio St.2d 14, 13 O.O.3d 8, 391 N.E.2d 337, the question should not be allowed because it asks about an issue that is not

further indicates that the answer would not be used for any improper purpose such as that indicated by the state and the dissent. We can presume that in a bench trial, the trial court will not use any testimony for an improper purpose.

{¶ 7} Because the trial court did not permit these questions, we must presume that the trial court did not speculate as to what the answers would be and consider them when reaching its decision.[4] *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754. The trial court had the burden of reaching a decision in which there was no physical evidence, and the case was merely a matter of testimony between the two parties who were present. Thus, the issue of credibility was paramount. Because the answers to the questions may affect the credibility of the victim or Orick, we cannot conclude that it was harmless error for the trial court to disallow the questions. The second assignment of error is sustained.

{¶ 8} The first assignment of error basically claims that the trial court's judgment was against the manifest weight of the evidence and that the trial court erred by not making findings of fact. Having sustained the second assignment of error, the first assignment of error is moot, as a new trial is necessary.

{¶ 9} The judgment of the Court of Common Pleas of Mercer County, Juvenile Division, is reversed, and the matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

ROGERS, J., concurs.

SHAW, J., dissents.

SHAW, J., dissenting.

{¶ 10} I respectfully dissent from the majority decision to reverse this case based on the trial court's limitation of certain questions on cross-examination. As an initial matter, I note that the scope of cross-examination is a matter within the sound discretion of the trial court. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 407 N.E.2d 490. Consequently, the trial court's decision "will not be reversed unless there has been a clear and prejudicial abuse of discretion."

material to the proof. In *Gardner*, the defense wanted to question the victim about her reputation as a prostitute, not about anything relevant to the case before it. Here, the question was about the actions of the victim in this instance and were discussed on direct examination.

4. The dissent claims that we already know the answers to these questions, so they are not necessary. However, to reach that conclusion, this court would have to engage in speculation as to what her answers on cross-examination would be.

Id. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 11} The majority asserts that the trial court improperly limited cross-examination of the victim in two instances. I believe the majority misconstrues the evidentiary context of the questioning in both instances. More importantly, however, neither question would have had any determinative impact on the credibility evaluation of the victim by the trial court in this bench trial and therefore could not be the basis for reversible error in any event.

{¶ 12} The first question involved how Orick knew where the victim was going to be after school.

Q. Do you know whether he knew where you were going to be that day?

A. After—

Mr. Hinders: Objection, your Honor. That's self evident, I believe. He was there.

Mr. Sacher: She indicated, your Honor, that Bryant had never been at the Willow Street address before.

The Court: Okay. Back up. Exactly what is your question, Mr. Sacher?

Mr. Sacher: Whether she knows how Bryant knew that she was going to be there that day and where she was going to be.

Mr. Hinders: I believe I already objected to the speculative part of that as to how the victim would know how the defendant knew.

The Court: I will sustain that objection based on that. All right. Continue, please, Mr. Sacher.

{¶ 13} Although the majority claims that this was an improper limitation on cross-examination, the majority fails to consider the full line of questioning. Prior to asking the victim whether she knew how Orick knew she would be at a home other than her own after school, the victim was asked, "Did you tell him where you were going to be after school that day?," and "Did you invite him.* * * ." The victim stated that she had not told Orick she would be at the location of the assault and that she did not invite him. Therefore, regardless of whether the question was asked on direct or cross-examination, it is clear that the victim would only be speculating as to how Orick found her at the location of the assault.

{¶ 14} The second line of questioning that Orick contends was improperly limited involved whether the victim resisted Orick's advances.

Q. What was your reaction to that? Did you try at all to defend yourself?

Mr. Hinders: I'm going to object, your Honor. That's specifically excluded in the statute. Resistance is not required, and the witness has already testified as to what occurred.

The Court: Any response, Mr. Sacher?

Mr. Sacher: Well, I know, your Honor, that force is an element involved here. And if force were exerted, I think it's relevant to know if there was any resistance.

The Court: The court is going to sustain the objection pursuant to 2907.02(D) of the statute under the rape shield, Mr. Sacher.

{¶ 15} Revised Code 2907.02, Ohio's rape shield law, provides:

(C) A victim need not prove physical resistance to the offender in prosecutions under this section.

(D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶ 16} In the present case, although the trial court sustained the objection to the question regarding whether the victim defended herself based on R.C. 2907.02(D), we note that R.C. 2907.02(C) provides the pertinent section of the rape shield law. Accordingly, the trial court was correct in sustaining the state's objection even though it apparently cited the wrong subsection of the statute. And the majority is similarly mistaken in relying on R.C. 2907.02(D) instead of 2907.02(C) in determining that it was error to sustain the objection.

{¶ 17} More importantly, the majority argument that R.C. 2907.02(C) does not apply to the issue of the victim's consent demonstrates a fundamental misunderstanding of the rape shield law. The entire purpose of the provision in section (C) that the victim does not have to prove physical resistance is that the trier of fact should not be permitted to infer consent merely from the failure of the victim

to physically resist. That is precisely why inquiry into the matter of physical resistance on cross-examination may properly be restricted by the trial court, as it was in this case. It also means that the trier of fact (in this case, the trial court), is permitted to *presume* that the victim did not physically resist and still find beyond a reasonable doubt that the victim did not consent to the sexual conduct—which is why the victim's answer to the excluded question was irrelevant in this case.

{¶ 18} At the very least, having concluded that there would be no probative value to the finding of physical resistance, I would follow the rationale of the Ohio Supreme Court and hold that this evidence was properly excluded when it was offered only to attack the victim's credibility. *State v. Gardner* (1979), 59 Ohio St.2d 14, 17, 13 O.O.3d 8, 391 N.E.2d 337 (in order for the contested evidence to be admitted, its probative value must be more important than merely to attack the credibility of a witness); *State v. Guthrie* (1993), 86 Ohio App.3d 465, 467, 621 N.E.2d 551.

{¶ 19} In sum, I would hold that the trial court did not abuse its discretion, nor was there any conceivable reversible error in the court's disallowing either of these lines of questioning. Based on the foregoing, I would overrule Orick's second assignment of error and address the first assignment of error employing the proper standards of appellate review.