[Cite as *State v. Thompson*, 2018-Ohio-4689.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27924 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-377/2 |
| | : | |
| CRAIG THOMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CRAIG THOMPSON, Inmate No. A721-446, Warren Correctional Institution, P.O. Box 120, Lebanon, Ohio 45036
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Craig Thompson, appeals pro se from the trial court's judgment entry of January 31, 2018, in which the court granted summary judgment in favor of the State on his petition for postconviction relief. Raising five assignments of error, Thompson argues, first, that the trial court's judgment should be reversed because his defense counsel did not provide effective assistance in connection with his decision to reject an alleged plea agreement. Second, Thompson argues that the trial court abused its discretion by refusing to hold a hearing on the petition. Third, claiming that the State did not move for summary judgment on its own behalf, Thompson argues that the trial court violated Civ.R. 56 by granting summary judgment in the absence of a motion. Fourth, Thompson argues that the State violated his right to due process by failing to serve him with a copy of its memorandum in opposition to the petition, adding that the trial court should not have considered the memorandum pursuant to Civ.R. 5(B)(4). Fifth, he argues that the trial court compromised its impartiality by proposing a plea agreement to him.

{¶ 2} We find that the trial court abused its discretion, under the circumstances, by entering judgment on Thompson's petition for postconviction relief without holding a hearing. Although Thompson submitted six affidavits in support of the petition, the State did not respond with affidavits or other summary judgment evidence in support of its opposition, yet the trial court granted judgment in the State's favor without indicating why it disregarded Thompson's evidence. Therefore, we reverse the judgment of January 31, 2018, and remand this case to the trial court. On remand, the trial court should allow the parties to renew their arguments and, if warranted by the parties' submissions, hold

a hearing on the petition. If the court determines that a hearing is not warranted by the parties' submissions, then it should explain the basis of that determination in its judgment entry. Further, if the court deems an affidavit submitted by either party to lack credibility, then its judgment entry must include an evaluation of the affidavit consistent with the Ohio Supreme Court's opinion in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

## I. Facts and Procedural History

{¶ 3} On March 5, 2013, a Montgomery County grand jury issued an indictment against Thompson, charging him with one count of complicity in the commission of burglary, a second degree felony pursuant to R.C. 2911.12(A)(1), 2911.12(D), 2923.03(A)(2) and 2923.03(F). The case was tried to a jury in April 2014, but the trial court declared a mistrial after the jury reported that it was deadlocked.

{¶ 4} In advance of his second trial, Thompson moved to dismiss the indictment against him on double-jeopardy grounds. The trial court overruled the motion, and Thompson appealed. We affirmed the trial court's judgment. *State v. Thompson*, 2d Dist. Montgomery No. 26280, 2014-Ohio-5583. Following the second trial, in December 2015, Thompson was found guilty, and the trial court sentenced him to a six-year term of imprisonment. Thompson initiated a second appeal, and we affirmed his conviction. *State v. Thompson*, 2d Dist. Montgomery No. 26954, 2016-Ohio-7521.

{¶ 5} On February 15, 2017, Thompson filed a motion with the Ohio Supreme Court in which he requested that the Court disqualify the trial judge presiding over his case. He filed a petition for postconviction relief with the trial court one day later, along with a motion to stay consideration of the petition while the motion for disqualification remained pending. The trial court apparently granted the stay, although no

corresponding order or decision appears on the docket. The Ohio Supreme Court overruled the motion to disqualify on June 5, 2017, and on July 7, 2017, Thompson moved the trial court to rescind the stay of its consideration of his petition. Although the trial court did not enter an order or decision rescinding the stay, the State filed a memorandum in opposition to Thompson's petition for postconviction relief on August 15, 2017, and Thompson filed a reply in support on August 24, 2017.

{¶ 6} In its judgment entry of January 31, 2018, the trial court granted summary judgment on the petition in favor of the State. Thompson timely filed his notice of appeal to this court on March 2, 2018.

## II. Analysis

{¶ 7} We address Thompson's assignments of error out of sequence because we find that our disposition of his second assignment is determinative of the outcome. For his second assignment of error, Thompson contends that:

[THE] TRIAL COURT ERRED WHEN DENYING [SIC] THOMPSON

A HEARING ON HIS POST-CONVICTION PETITION[.]

{¶ 8} Thompson alleges that with his second trial set to begin, either the trial court or the State proposed a plea agreement whereby he would plead guilty as charged in exchange for a sentence of three years' imprisonment.[1] *See* Appellant's Br. 5-8. As he did in his petition for postconviction relief, Thompson argues that his defense counsel rendered ineffective assistance by recommending that he reject the agreement, because counsel purportedly based the recommendation on a "misguided" belief that certain

_____

[1] The maximum term of imprisonment to which Thompson could have been sentenced was eight years. *See* R.C. 2911.12(A)(1), 2911.12(D), 2923.03(F) and 2929.14(A)(2).

evidence, not introduced at his first trial, would be discredited or deemed inadmissible at his second trial. *Id.* at 5-7. Although Thompson attached affidavits to his petition ostensibly confirming that a plea agreement had been proposed to him, the trial court found that because the State "represented in its response" to the petition "that no such offer was ever made," Thompson's "argument on [the] issue [was] moot." Decision, Order and Entry Granting Summary Judgment in Favor of the State on Defendant's Petition to Vacate or Set Aside Judgment of Conviction and Sentence 6, Jan. 31, 2018 [hereinafter *Judgment Entry*]. Thompson argues that the trial court erred by entering judgment on his petition without holding a hearing.

{¶ 9} We review the trial court's ruling on Thompson's petition for postconviction relief "under [the] abuse of discretion standard." (Citation omitted.) *State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 10. The term " 'abuse of discretion' [is] defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *Id.*

{¶ 10} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)," according to which the defendant bears the burden to show that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.); *State v. Wilkins*, 127 Ohio App.3d 306, 310, 712 N.E.2d 1255 (2d Dist.1998), citing *State v. Pankey*, 68 Ohio St.2d 58, 428 N.E.2d 413 (1981); *State v. Samilton*, 8th Dist. Cuyahoga No. 92823, 2010-Ohio-

439, ¶ 19.   Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."   *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).   To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different."   *Id.* at 694.   A failure "to make either showing defeats" the claim.   *Cardenas* at ¶ 38.

**{¶ 11}** For Thompson to establish an entitlement to relief on his claim of ineffective assistance of counsel, he bears the burden to show that he was offered a plea agreement; that his defense counsel provided legally unsound advice by recommending that he reject the offer; that he would have entered into the agreement but for his counsel's unsound advice; that the offer would not have been withdrawn; that the trial court would have approved the agreement; and that his sentence pursuant to the agreement would have been more favorable than the sentence actually imposed by the court.   *See Lafler v. Cooper*, 566 U.S. 156, 162-164, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 32-33.   Thompson maintains that the 13 exhibits attached to his brief comprise evidence sufficient to meet his burden.   *See* Appellant's Br. 8 and 11-12.

**{¶ 12}** Exhibits 1-5 and 13 to Thompson's brief are affidavits executed on or after February 14, 2018, yet the trial court entered the judgment from which Thompson appeals on January 31, 2018, meaning that these exhibits were not part of the record before the trial court and are, consequently, not part of the record before this court.[2]   Exhibit 6,

---

[2] Thompson affixed an "exhibit" label and an "attachment" label to each of the exhibits

which Thompson did not file in support of his petition for postconviction relief, is likewise excluded.[3]   Exhibits 7-12, however, are six affidavits that Thompson submitted to the trial court along with his petition for postconviction relief, and they are therefore part of the record for purposes of the instant appeal.

{¶ 13} A proceeding for postconviction relief is "a collateral civil attack on [a] criminal conviction" and is thus "subject to the rules of civil procedure."   *State v. Harris*, 8th Dist. Cuyahoga No. 94186, 2010-Ohio-3617, ¶ 7, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); *see also State v. Perkins*, 2d Dist. Montgomery No. 24397, 2011-Ohio-5070, ¶ 9, citing *Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905. In this case, the trial court entered summary judgment in favor of the State on Thompson's petition.   Judgment Entry 6-7; *see also* R.C. 2953.21(E) (permitting summary judgment on petitions for postconviction relief).   Under Civ.R. 56(C), summary judgment "shall be rendered forthwith" when: (1) "there is no genuine issue as to any material fact"; (2) "the moving party is entitled to judgment as a matter of law"; and (3) construing the evidence most strongly in favor of the non-moving party, "reasonable minds" could not reach a contrary conclusion.   *See also Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).   The moving party initially bears the burden to demonstrate the absence of any genuine issue of material fact.   *Mitseff v. Wheeler*, 38

---

accompanying his brief.   Our citations to the exhibits incorporate the numbers appearing on the "attachment" labels.

[3] Exhibit 6 includes two documents, neither of which has been properly authenticated.   *See* Evid.R. 901-902.

Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). If the moving party satisfies its burden, then the non-moving party must meet a reciprocal burden to establish "specific facts" by "affidavit or as otherwise provided in [the] rule," showing that at least one genuine issue remains to be tried. Civ.R. 56(E); *see also* Civ.R. 56(C); *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶ 14} In contrast to the application of Civ.R. 56 in purely civil actions, "in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea." *Calhoun* at 284. Accordingly, "the trial court may, under appropriate circumstances * * *, deem affidavit testimony to lack credibility without [prior] observ[ation] or examin[ation] [of] the affiant." *Id.* An affidavit should nevertheless "not lightly be deemed false," given that it is "by definition a statement that the affiant has sworn to be truthful, and [has] made under penalty of perjury." *Id.*

{¶ 15} In *Calhoun*, the Ohio Supreme Court indicated that a trial court should "consider all relevant factors" in evaluating the credibility of affidavits in support of a petition for postconviction relief, including the following: "(1) whether the judge reviewing the * * * petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or [are] otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial." (Citation omitted.) *Id.* at 285. A "trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of

law, in order that meaningful appellate review may occur." *Id.*; *see also State v. Henry*, 2017-Ohio-7427, 96 N.E.3d 1139, ¶ 20-24 (2d Dist.).

{¶ 16} Here, the trial court treated the State's memorandum in opposition to Thompson's petition for postconviction relief as a motion for summary judgment, implicating the requirements of Civ.R. 56. Judgment Entry 2. Although Thompson submitted six affidavits in support of his petition, all of which referred to the plea agreement he was allegedly offered, the State did not attach any affidavits or other summary judgment evidence to its memorandum in opposition. Notwithstanding this disparity, the trial court held that because the State "represented in its response" to Thompson's petition "that no such offer was ever made," Thompson's "argument on [the] issue [was] moot." *Id.* at 6. At no point in its judgment did the trial court acknowledge the existence of the affidavits submitted by Thompson. *See id.* at 4-7. The affidavits, at least theoretically, could have been sufficient to give rise to a genuine dispute of material fact, inasmuch as the State did not support its motion with summary judgment evidence. *See* Civ.R. 56.

{¶ 17} Potentially, one or more of the *Calhoun* factors may apply to discount the credibility of all of Thompson's six supporting affidavits, but the trial court "failed to provide findings of fact and conclusions of law to explain why" it deemed the affidavits to lack credibility. *Henry* at ¶ 23. In the absence of any such analysis, the trial court abused its discretion by entering summary judgment in favor of the State without holding a hearing on the petition. *See Calhoun* at 285 and 291; *Henry* at ¶ 20-24; *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 17-23 (2d Dist.). Thompson's second assignment of error is sustained.

**{¶ 18}** For his first assignment of error, Thompson contends that:

CRAIG THOMPSON'S SENTENCE IS VOID AND/OR [SIC] VOIDABLE BECAUSE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY UNREASONABLY FAILED TO COUNSEL HIM TO ACCEPT THE STATE OF OHIO'S OFFER OF 3 YEARS WITH JUDICIAL RELEASE PROBABILITY [SIC] AFTER 6 MONTHS IN EXCHANGE FOR HIS GUILTY PLEA[.]

**{¶ 19}** Our disposition of Thompson's second assignment of error renders his first assignment of error moot. Therefore, Thompson's first assignment of error is overruled.

**{¶ 20}** For his third assignment of error, Thompson contends that:

[THE] TRIAL COURT ERRED WHEN GRANTING [SIC] SUMMARY JUDGMENT IN FAVOR OF THE STATE WHEN [SIC] THOMPSON WAS THE PARTY ENTITLED TO SUMMARY JUDGMENT[.][4]

**{¶ 21}** We have found that the trial court abused its discretion, under the specific circumstances of this case, by entering judgment on Thompson's petition without holding a hearing. As a result, Thompson's third assignment of error is overruled as moot.

**{¶ 22}** For his fourth assignment of error, Thompson contends that:

THE PROSECUTION DELIBERATELY HINDERED THOMPSON'S RIGHT TO DUE PROCESS BY NOT SERVING HIM A COPY OF [THE] STATE'S FILINGS[.]

**{¶ 23}** Here, Thompson argues that the State violated his right to due process by

---

[4] Thompson presents his third assignment of error twice, with the second presentation differing slightly, but not substantively, from the first. *Compare* Appellant's Br. 3, *with* Appellant's Br. 12.

failing to serve him with a copy of its memorandum in opposition to his petition for postconviction relief. He adds that the trial court should not have considered the memorandum in opposition because the State did not file it timely or attach a certificate of service in full compliance with Civ.R. 5(B).

{¶ 24} Thompson's fourth assignment of error is also rendered moot by our disposition of his second assignment of error. On remand, Thompson will have the opportunity to request that the trial court address these issues and order any relief that might be warranted.

{¶ 25} For his fifth assignment of error, Thompson contends that:

BY INITIATING THE PLEA PROCESS [SIC], THE INVOLVEMENT BY THE JUDGE IN THE PLEA NEGOTIATIONS IS IN VIOLATION OF FEDERAL AND STATE CONSTITUTIONAL GUARANTEES OF DUE PROCESS THAT DENIED [SIC] THOMPSON THE CONSTITUTIONAL RIGHT TO A FAIR TRIAL[.]

{¶ 26} Finally, Thompson argues that by "initiat[ing] the plea process," the trial court compromised its impartiality and "subjected [him] to an unfair trial." *See* Appellant's Br. 19. None of the evidence on record, however, establishes that the trial court proposed a plea agreement or participated in any discussions concerning a plea agreement. *See id.* at Exs. 7-12. Without evidence of the trial court's involvement, if any, in the making of the alleged offer, we cannot find that the court compromised its impartiality or that it thereby violated Thompson's right to a fair trial. Thompson's fifth assignment of error is overruled.

**III. Conclusion**

**{¶ 27}** Under the circumstances of this case, we find that the trial court abused its discretion by entering judgment on Thompson's petition for postconviction relief without holding a hearing. Therefore, the trial court's judgment of January 31, 2018, is reversed, and this case is remanded to the trial court. On remand, the trial court should allow the parties to renew their arguments and, if warranted by their submissions, hold a hearing on the petition. If the court determines that a hearing is not warranted, then it should explain the basis of that determination in its judgment entry. Furthermore, if the court deems an affidavit submitted by either party to lack credibility, then its judgment entry must include an evaluation of the affidavit consistent with the Ohio Supreme Court's opinion in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

. . . . . . . . . . . .

FROELICH, J., concurs.

HALL, J., concurring:

**{¶ 28}** I agree with the majority opinion, particularly its conclusion that whether a plea deal was offered to the defendant is not moot simply because the State's memorandum represents that no offer was made. Courts may consider factual information available by affidavit, by the trial court's evaluation of Appellant's materials, by the transcripts and the record, by the trial court's own recollection of what happened during the proceedings, or by other evidentiary materials of the nature ordinarily submitted in a postconviction-relief context.

**{¶ 29}** I do have great concerns, however, about Thompson's petition and his submissions when considered in the context of the record. Thompson's rendition of some

of the facts does not make sense. Sometimes facts get in the way of argument.

{¶ 30} Thompson asserts that his attorney was ineffective for telling him that "new" evidence would be inadmissible, that new testimony would not be believed, and that Thompson had been convinced by his attorney to reject a plea offer because the attorney told him the case was "winnable." The "new" evidence consisted of text messages from witness Shai Bathini and previously unknown testimony from codefendant Brad Burns' girlfriend, Kaitlynn Kerg. Careful review of the trial transcripts reveals the Bathini text messages were of minor significance and concerned Thompson's and Bathini's broken relationship and Thompson's precarious financial straits. But Kerg was expected to, and did, testify that she was with Burns and Thompson shortly before the burglary when they discussed the planning of the offense. That evidence, if believed, was particularly damaging to Thompson regarding proof of his only charge: complicity to commit burglary.

{¶ 31} The first concerning part of the petition is that this "new" evidence, which would strengthen the State's case, likely would not result in the State softening its position by offering a more generous plea deal. But that's what Thompson implied in his petition. He argued: "[T]he State made a new offer to [Defense Counsel]: In exchange for Thompson's plea of guilty, the State would recommend 3 years in prison with the probability of judicial release after 6 months," and sentencing would be delayed until after Christmas so he could spend the holidays with his children. (Petition for PCR filed February 16, 2017 at 2). If the "new" evidence is a concern because it adds to and bolsters the State's case, there is no logical reason for the State to make a new and reduced plea offer.

{¶ 32} The second concerning issue is the purported plea offer itself. Thompson

was charged with complicity to commit burglary, a second-degree felony. His record included first or second-degree felony aggravated robbery or robbery convictions in Montgomery, Miami, Darke, Franklin, and Greene counties in Ohio and similar convictions in Kentucky and Indiana. That means a plea as charged would result in mandatory incarceration, and Thompson would not have been eligible for judicial release. R.C. 2929.13(F)(6). Counsel obviously was aware of this, as indicated by his acknowledgement of mandatory prison time in his sentencing memorandum. Nowhere in the specific descriptions of the multiple affidavits describing the purported plea offer— "three years with the possibility for judicial release after serving 6 months and the court would postpone sentencing"—is there any reference to an absolutely necessary term: modification of the indicted charge to a lesser degree.  Given the nature of the offense, Thompson's record and prior imprisonment, and the State's memorandum requesting the maximum sentence, reduction of the charge seems unlikely.[5]

{¶ 33} Third is the timeline of events. Kaitlynn Kerg was first listed as a State's witness in September 2015. Re-trial had been set for October 5, 2015. On October 1, 2015, trial counsel filed a motion to continue the October 5th trial, indicating that he

---

[5] We correctly do not consider the affidavit of Thompson's counsel dated February 15, 2018, which was submitted as Attachment 1 of the Brief of Appellant. The trial court had ruled on the postconviction petition before counsel's affidavit was filed, and Thompson cannot supplement the record by attaching new information to his brief. However, comprehensive research of this issue has led to the discovery that Thompson attached a similar affidavit to his Amended Affidavit of Disqualification of Common Pleas Judge filed in the Ohio Supreme Court on July 30, 2018. But the two affidavits, purportedly signed the same date by his attorney, are in a different font, contain a different year in the first paragraph, the same notary's signature is similar but not identically placed, and neither affidavit supports a judicial-release eligibility element in plea discussions. Perhaps two almost-identical affidavits were prepared by the attorney on the same date, but it is a curious discrepancy nonetheless.

recently had learned of Kerg's statement implicating Thompson on September 28, 2015, and "[g]iven the overwhelming potential significance" of her evidence he needed more time to properly investigate it. In that October 1, 2015 motion, counsel also said he had not yet seen the "new" Bathini texts. The trial court conducted "an in-chambers conference with counsel for the State of Ohio and counsel for the Defendant" on October 1, 2015, and the trial was continued to December 7, 2015. (Entry filed October 5, 2015). Kerg was interviewed by defense counsel's investigator, Wayne Miller, on November 13, 2015. One could expect that trial counsel would not be in a position to opine about the inadmissibility of texts he had not yet seen or about whether Kerg's testimony "would not be believed" until sometime after review of discovery and after the investigator's interview of Kerg. Thompson's affidavits all indicate that a family discussion about whether to take the purported plea agreement occurred on November 26, 2015, Thanksgiving Day. That means that the "new" offer, if made, likely would have been conveyed to Thompson after the November 13, 2015 Kerg interview and before the family's Thanksgiving confab. Otherwise they would have had nothing to talk about. There was no court event of record during that time period.

{¶ 34} The next scheduled event was a final pretrial conference set for the next Monday, November 30, 2015 at 9:30 a.m. But Thompson has not caused the submission of a transcript of that proceeding, if one exists, despite his recollection that at some time or another, "Honorable Judge Gorman stated the proposed offer on the record and requested a decision by the Defendant in open court and on the Record." (Memorandum Contra Opposition to Post-Conviction Relief filed August 24, 2017 at p. 5). The trial began the following Monday, December 7, 2015. Nowhere in the five volumes of trial transcript

is there a discussion on the record of a plea agreement for Thompson. So if a plea offer was made of record, as Thompson states, it most likely was at the final pretrial conference (a transcript of which Thompson has not supplied), because there was no other docketed event from the time of counsel's discovery of Bathini's texts or of Kerg's expected testimony until the trial.

**{¶ 35}** It seems inconsistent that the attorney's reference to Kerg's "overwhelming" evidence also would cause counsel to suggest to Thompson that her testimony was of no consequence because she "would not be believed." (Thompson affidavit dated January 5, 2017). Nevertheless, if there was a plea offer, was it only a representation as to sentencing from the court, or a recommendation of a reduction in the charge from the State? Both an acceptance by the court of sentencing terms and a reduction in the level of the charge by the State would have been necessary to effectuate the purported plea with the judicial-release eligibility option.

**{¶ 36}** Assuming that Thompson can demonstrate that a plea offer had been made, he still needs to demonstrate ineffective assistance. Undoubtedly, the Sixth Amendment right to counsel extends to plea bargaining and to the assistance of counsel on whether to accept a plea. *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). But "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.* at 174. The only direct information in our record is what Thompson and his mother claim trial counsel told them:[6] that the "new" text messages would be inadmissible, that the testimony of Kaitlynn Kerg would not be

---

[6] The rest of the affidavits only relate what Thompson told his family the attorney told him and constitute double hearsay.

believed, and that the case was "winnable." These representations, if true, could be viewed as strategic predictions and insufficient to constitute ineffective assistance. It has been held, in the context of estimation of a sentence, that an attorney's inaccurate prediction of a sentence does not demonstrate ineffective assistance. *See, e.g., State v. McMichael*, 10th Dist. Franklin No. 11AP-1042-44, 2012-Ohio-3166, ¶ 32. The same notion could apply to a prediction of trial results.

**{¶ 37}** Although the circumstances I have detailed could be reasons to question Thompson's arguments and submissions, those determinations should be made by the trial court in the first instance. Suffice it to say I agree that the State's representation in its memorandum in opposition to the postconviction-relief petition that a plea offer was not made was insufficient to render that issue moot. Accordingly, I concur.

Copies mailed to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Craig Thompson
Hon. Barbara P. Gorman