[Cite as *In re S.W.E.*, 2021-Ohio-80.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| IN THE MATTER OF S.W.E. | : | Appellate Case No. 2020-CA-27 |
|  | : |  |
|  | : | Trial Court Case D49372 |
|  | : |  |
|  | : | (Appeal from Common Pleas Court – Juvenile Division) |
|  | : |  |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of January, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Appellee

BRADLEY P. KOFFEL, Atty. Reg. No. 0062184, 1801 Watermark Drive, Suite 350, Columbus, Ohio 43215
    Attorney for Appellant

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** S.W.E. appeals from his adjudication for rape in the Montgomery County Court of Common Pleas, Juvenile Division. He presents claims of ineffective assistance of counsel and contends that the court improperly limited his cross-examination of the victim and that his adjudication was against the manifest weight of the evidence. For the following reasons, we affirm the court's adjudication.

## I. Factual and Procedural Background

**{¶ 2}** On December 21, 2018, S.W.E., age 17, was charged with a single count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree if committed by an adult. S.W.E. denied the charge. The State offered to allow him to admit to a charge of felonious assault, and it requested that an assessment be done to determine whether S.W.E. needed treatment and that he be placed on community control and follow any treatment recommendations. Defense counsel discussed the plea offer with S.W.E. and advised him to accept it, but S.W.E. rejected counsel's advice.

**{¶ 3}** At the start of the July 2, 2019 dispositional hearing, the State read its plea offer into the record.[1] Defense counsel told the court that S.W.E. rejected the offer. The trial court then addressed S.W.E. directly and asked him if he wanted to reject the plea offer; he answered, "Yes." (Tr. 7.) The court asked S.W.E. if he understood that, if he were found delinquent for rape, he could be placed into the custody of the Department of Youth Services, he could receive a fine, and he could, at the trial court's discretion, be

---

[1] At the hearing, the State referred to an offer to plea to felonious assault, but S.W.E. says that the offer was to plea to attempted felonious assault. In its brief, the State says that it will accept S.W.E.'s representation, but it is not relevant for purposes of this appeal which offense was mentioned.

classified as a sex offender and be subject to the registration requirements under Tier I, II, or III. S.W.E. indicated that he understood. The court continued: "And knowing that you could be placed at the Ohio Department of Youth Services for an indefinite term, a minimum of which is one year up until your 21st birthday, knowing what the maximum fine the Court could impose and knowing that the court could order you to register as a sex offender at any one of those three Tier levels, do you still want to reject the State's offer and go forward with the trial today?" S.W.E. answered affirmatively, (Tr. 9-10), and the hearing proceeded.

{¶ 4} The victim testified that she knew S.W.E. from school, where they were both students. He was 17 years old, she was 18. Around 1 p.m. on November 11, 2018, she went to his house in Jamestown, Ohio. When she arrived, she took off her shoes in the living room, and they started listening to music. The two made their way into S.W.E.'s bedroom, where the victim sat down on the bed, perpendicular to him, while they talked. Brushing dog hair off of her sweatpants and telling her that he could "fix" the dog hair, he began to pull off her pants. The victim testified that she told him, "I don't want you to do that * * * I don't want to do anything." (Tr. 27.) She resisted S.W.E.'s advances by pulling up her pants and telling him no. But S.W.E. persisted and managed to get her pants off. He then took off her underwear, despite the victim telling him, "No, like I don't want you to take them off." (Tr. 29.)

{¶ 5} After taking off her pants and underwear, S.W.E. stood up, moved her legs, pulled down his own pants and underwear, and put his penis in her vagina. The victim testified, "I put my hands on his chest, and I told him to stop," (Tr. 32), but he did not stop. She told him that it hurt, that she was afraid, and multiple times she told S.W.E. to stop

and tried to push him away. He still did not stop, and the victim testified that she was afraid he would hit her.

{¶ 6} After S.W.E. had finished and left the room, the victim put on her clothes and went into the bathroom. She saw that she was bleeding a lot. She left S.W.E.'s house and went to her best friend's house, where she tearfully recounted what had happened. The victim and her friend went to the Jamestown Police Department and then to the Greene County Sheriff's Department in Xenia to report what had happened, but both were closed. The victim then went to work, where she told her co-worker and cousin what had happened. The cousin took the victim to the hospital.

{¶ 7} At the hospital, a sexual assault nurse examiner completed a rape kit. The nurse testified that she examined the victim at the hospital and found a significant skin tear at the vaginal opening that was consistent with the victim's explanation of how she received the injuries. The nurse explained that vaginal tearing during consensual sex is not common in 18-year-old females.

{¶ 8} S.W.E. took the stand in his own defense. He testified that the sex was entirely consensual. He admitted that he never asked the victim to have sex and that she never verbally consented to sex. S.W.E. said that she "didn't say anything." (Tr. 181, 184.) He testified that "[s]he never said no." (Tr. 181.) "She never pushed me away, she never forcefully made me stop." (Tr. 184.) When asked if she had said yes to having sex, S.W.E. answered, "I don't know what she would say yes to." He said that he got the "vibe" that she was consenting. "I just felt like fluently and normal. Nothing was going wrong." (Tr. 182.)

{¶ 9} The trial court found S.W.E. delinquent for committing a rape offense. He

appeals.

## II. Analysis

{¶ 10} S.W.E. raises four assignments of error on appeal. We begin with the first and fourth assignments of error and their claims of ineffective assistance of counsel.

## A. Ineffective Assistance of Counsel – Plea Offer

{¶ 11} The first assignment of error alleges:

Appellant was deprived of his right to effective assistance of counsel with respect to the State's plea proposal.

{¶ 12} S.W.E. contends that counsel failed to tell him that an adjudication of delinquency for rape entailed *mandatory* sex-offender classification and registration. He also contends that counsel failed to advise him that the State's plea offer was an unusually good offer and that accepting the proposal was the only reasonable decision under the circumstances.

{¶ 13} To establish ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient, that is, that counsel's conduct fell below an objective standard of reasonableness, and show that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). A failure to make either showing defeats the claim. *State v. Thompson*, 2d Dist. Montgomery 27924, 2018-Ohio-4689, ¶ 10. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland*

at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 14} Where an ineffective-assistance claim involves rejection of a plea offer and the defendant is later convicted at the ensuing trial, the defendant must show that "he was offered a plea agreement; that his defense counsel provided legally unsound advice by recommending that he reject the offer; that he would have entered into the agreement but for his counsel's unsound advice; that the offer would not have been withdrawn; that the trial court would have approved the agreement; and that his sentence pursuant to the agreement would have been more favorable than the sentence actually imposed by the court." *Thompson* at ¶ 11, citing *Lafler v. Cooper*, 566 U.S. 156, 162-164, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) and *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 32-33.

{¶ 15} S.W.E. was 17 years of age at the time he committed the rape offense. By statute, he was subject to mandatory classification and the corresponding registration requirements. R.C. 2152.191; R.C. 2152.83(A). The classification tier was up to the trial court to decide. R.C. 2152.831. Trial counsel admitted that, in advising S.W.E., he did not tell S.W.E. that if he was adjudicated delinquent for rape, sex-offender classification and registration would be mandatory, nor did counsel tell S.W.E. that being adjudicated delinquent for rape could result in his detention until he turned 21 years of age. During the plea colloquy, the trial court told S.W.E., incorrectly, that if he were adjudicated delinquent for rape, the court had the discretion to classify him as a sex offender. In reviewing the State's plea offer, the trial court told S.W.E. that if he were adjudicated delinquent for rape, the court "at the Court's discretion, could classify you as a sex offender." (Tr. 8.) Counsel did not correct the court. But at the time of this discussion,

S.W.E. had already expressed his intention to reject the plea offer. (T. 7.)

{¶ 16} S.W.E. states in his affidavit: "From speaking with my new attorney Mr. Koffel, I now understand that the prosecutor's plea offer of attempted felonious assault was a great offer and that it was stupid to not accept it. If [counsel] had more strongly recommended accepting the plea offer, I would have." While counsel did not advise S.W.E. that the State's offer was unusually good or that accepting the offer was the only reasonable decision, the record shows that counsel discussed the plea offer with S.W.E. and advised him to accept it. We do not think that it was objectively unreasonable for counsel not to "more strongly recommend[ ] accepting the plea offer," as S.W.E. contends. Counsel had a duty to ensure that S.W.E. understood the offer, and there is no evidence that S.W.E. misunderstood what the State was offering. *See State v. Bonner*, 2d Dist. Montgomery No. 19656, 2003-Ohio-4317, ¶ 45 (noting that the record failed to show that defendant misunderstood the plea offer). We note that S.W.E.'s psychological evaluation stated that he had no mental health issues or problems that might interfere with his understanding. There was nothing to suggest that S.W.E. did not understand that, if adjudicated delinquent for rape, he could be classified as a sex-offender and be subject to reporting requirements.

{¶ 17} S.W.E. claims that counsel should have been more forceful with his advice. S.W.E. essentially argues that if he had known he likely would be adjudicated delinquent for rape, he would have accepted the plea offer. But "[h]indsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time[.]" *In re T.J.*, 2d Dist. Champaign No. 2014-CA-35, 2015-Ohio-2881, ¶ 23, citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

**{¶ 18}** Regardless, whether or not counsel's performance was deficient, the record does not show that S.W.E. would have accepted the State's plea offer had counsel told S.W.E. that classification and registration would be mandatory if he were adjudicated delinquent for rape or had counsel been more forceful in his advice.

**{¶ 19}** The evidence suggests, rather, that S.W.E. rejected the plea offer because he believed that he was innocent. The record shows that he consistently maintained his innocence. The probation department's report noted that "[w]hen his mother referenced to getting an attorney, [S.W.E.] said to the officers he was not scared of anything because he knew it was not sexual assault." Under the probation report's "Summary of Impressions" section, the probation officer stated: "I am also aware that [S.W.E.] has maintained his innocence other than stating he did have consensual sex with the victim." Similarly, S.W.E.'s psychological-evaluation report noted that, "[u]pon being interviewed by the police, [S.W.E.] stated that he was not afraid of anything because he knew the sexual activity between them was not sexual assault." And the Juvenile Sex Offender Assessment Protocol (SOAP) section of the psychological report contained several statements showing that S.W.E. believed he didn't do anything wrong:

- "While he clearly planned to have the victim over to his house in the hopes of engaging in sexual activity with her, there is no known evidence that he planned to force her to engage in the activity. More likely, he decided to force the activity when she did not willingly reciprocate."
- "While he did use force in his offense, there is no evidence that the force was beyond what was necessary to get the victim to comply."

- "All of his [dynamic] risk factors are related to his complete denial of the offense * * *."

- "[S.W.E.]'s denial of the offense represents a major barrier to successful completion of treatment."

{¶ 20} It would seem that, looking back, S.W.E. wishes he had accepted the plea offer, and he is now seeking to blame defense counsel.

{¶ 21} The first assignment of error is overruled.

### B. Ineffective Assistance of Counsel – Cumulative Error

{¶ 22} The fourth assignment of error alleges:

Appellant was deprived of his right to effective assistance of counsel during the adjudicatory hearing.

{¶ 23} S.W.E. argues that counsel was ineffective during the adjudicatory hearing based on a cumulation of errors, primarily in the nature of questions that counsel asked. S.W.E. cites six occasions during the adjudication proceedings in which, he says, trial counsel was ineffective: (1) counsel helped make the State's case by inviting the victim to testify that she felt that S.W.E. might hurt her; (2) counsel helped make the State's case by impeaching the victim's testimony that there was no way of telling whether S.W.E. would hit her; (3) during cross-examination of the victim, counsel invited her to testify that S.W.E. was violent, aggressive, and dangerous; (4) counsel was unprepared to conduct a direct examination of S.W.E.; (5) counsel did not understand the Rules of Evidence; and (6) counsel's closing argument was incompetent and self-defeating.

{¶ 24} Under the doctrine of cumulative error, "[s]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. * * * In

order to find cumulative error, we first must find that multiple errors were committed at trial." *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 40. "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." (Citation omitted.) *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223. Accordingly, cumulative error asserting ineffective assistance of counsel would require a determination that, while no single act by trial counsel met the *Strickland* standard, the cumulative effect of counsel's conduct met the standard. *See State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 55.

**{¶ 25}** "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31. When reviewing the entire record, there is nothing to demonstrate that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different.

**{¶ 26}** The fourth assignment of error is overruled.

### C. Limiting cross-examination of the victim

**{¶ 27}** The second assignment of error alleges:

The Juvenile Court erroneously restricted cross-examination of the alleged victim.

{¶ 28} During cross-examination, defense counsel asked the victim, "Did you ever try to fight him off?" (Tr. 71.) The State objected that it was irrelevant whether she tried to fight him off. Defense counsel responded that the testimony was relevant to the issue of force, and the State responded that the commission of rape does not require that the victim fight back. The trial court sustained the objection without further comment. S.W.E. contends that he should have been able to ask the question.

{¶ 29} A defendant has the right under the Sixth Amendment to cross-examine witnesses. Defense counsel must be given "wide latitude" on cross-examination and must be allowed "as complete a cross-examination as reasonably possible of witnesses identifying the defendant as the perpetrator of the crime." *State v. Hannah*, 54 Ohio St.2d 84, 88, 374 N.E.2d 1359 (1978). But there are limits, and "the limits to which a witness may be cross-examined are within the sound discretion of the trial court." *State v. Woodard*, 68 Ohio St.3d 70, 74, 623 N.E.2d 75 (1993).

{¶ 30} S.W.E. was charged with rape under R.C. 2907.02(A)(2), which provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The rape statute expressly states that a victim need not prove physical resistance to the offender. *See* R.C. 2907.02(C). Accordingly, "[a] rape occurs only if the perpetrator purposely compels the other to submit by force or threat of force." *State v. Wilkins*, 64 Ohio St.2d 382, 385, 415 N.E.2d 303 (1980).

{¶ 31} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Based on the understanding of "purposely" in R.C. 2901.22(A), "in a Rape case, to prove that the

defendant acted 'purposely,' the State must prove that it was the defendant's intention to engage in sexual conduct by forcefully compelling the other person to submit to the sexual conduct." *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 26 (2d Dist.).

{¶ 32} We said in *Hartman* that evidence of consent—or the lack of consent—is relevant to the State's ability to prove whether the defendant purposefully forced or compelled the alleged victim. *Id.* at ¶ 27. The question for the fact finder always remains whether, based on all the evidence, it was the defendant's intent to compel the alleged victim to submit to the sexual conduct by force. *Id.* Evidence of consent challenges the State's evidence on the element of purposeful force or compulsion by tending to negate a finding of force. *Id.* Evidence of consent also tends to show that the alleged victim did not engage in the sexual conduct because of force. In other words, it tends to show that it was not the defendant's intent to compel submission by force to the sexual conduct, i.e., compelling submission by force wasn't necessary, because the alleged victim consented. Proving that the alleged victim consented to the sexual conduct would preclude a finding that the defendant used force to compel submission.

{¶ 33} Here, the victim's answer to counsel's question might have been relevant to the issue of consent, not directly to the issue of force. If she had tried to fight him off, S.W.E. could not have thought she consented, which would suggest that he compelled her submission by force. But if she did not try to fight him off, consent to the sexual conduct still might have been found, i.e., because S.W.E. thought she consented, he did not intend to compel her submission by force.

{¶ 34} Rather than asking "Did you ever try to fight him off?," it would have been better if defense counsel had asked the victim whether she did anything physically to

show that she did not consent. The latter was the basic question at issue in *In re Orick*, 182 Ohio App.3d 333, 2009-Ohio-2097, 912 N.E.2d 1138 (3d Dist.). The question there was "whether she did anything to defend herself." *Id.* at ¶ 5. The Third District concluded that this question was permissible because the defendant should be allowed to question the victim about what she did, if anything, to stop him. The question was intended to elicit testimony to help determine whether she consented, which the court said was not the same as requiring her to prove that she fought him or that she physically resisted. The court found that "[t]his question was asked to impeach her credibility, and impeaching her credibility is permissible." *Id.* at ¶ 6. It is on this (albeit, minor) basis that *Orick* can be distinguished. Here, the question—whether the victim ever tried to fight off S.W.E.—was not asked to impeach the victim's credibility, and in our view was eliciting evidence of whether the victim physically resisted.

{¶ 35} At any rate, we need not decide whether the trial court should have allowed the question, because the exclusion of that one question was harmless in the context of the whole trial. Defense counsel was able to ask several other similar questions that elicited testimony relevant to the issue of consent, about what the victim did physically that showed her lack of consent. She testified about pulling her pants back up and putting her hand on S.W.E.'s chest. Moreover, the nurse's testimony about the vaginal tear provided physical evidence that the victim did not consent to the sexual conduct. Ultimately, even with the victim's answer to the excluded question, the finding that S.W.E. committed rape would still stand.

{¶ 36} The second assignment of error is overruled.

### D. Weight of the Evidence

{¶ 37} The third assignment of error alleges:

The adjudication is contrary to the manifest weight of the evidence.

{¶ 38} SWE contends that the weight of the evidence did not support finding that the sexual conduct was compelled by force.

{¶ 39} "In determining whether a verdict is against the manifest weight of the evidence, we are required to review the entire record, to weigh the evidence and all reasonable inferences, and to consider the credibility of the witnesses." (Citation omitted.) *Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, at ¶ 39. Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier-of-fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A manifest-weight-of-the-evidence argument questions the believability of the evidence and asks a reviewing court to determine which of the competing inferences is more believable." *Hartman* at ¶ 40. But "the appellate court may not substitute its judgment for that of the trier-of-fact on the issue of the credibility of the witnesses unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81 (2d Dist.).

{¶ 40} S.W.E. was found to have violated R.C. 2907.02(A)(2), which prohibits a person from "purposely compel[ling] the other person to submit [to sexual conduct] by force or threat of force." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). We have explained that "the elements of Rape can be established when the two participants start the sexual encounter on a consensual basis, but the consent is revoked

by words, actions or conduct that clearly communicates non-consent, the defendant fails to respect the change in consent, and purposely proceeds to engage in sexual conduct through force or threat of force evidenced by violence, physical restraint, or some type of coercive or threatening conduct that creates a belief or fear that physical force will be used if the victim does not consent." *Hartman* at ¶ 32.

{¶ 41} That's basically what seems to have happened here. Even if the encounter started out as consensual, it is clear from the victim's testimony that she revoked any consent she might have communicated. The victim testified that S.W.E. pulled her pants and underwear off, despite her pleas to stop. She said that she put her hands on his chest and told him to stop. She kept pulling her pants back up and telling him no. And she said that she feared S.W.E. might hit her. Furthermore, the nurse who examined the victim at the hospital testified that she had a significant vaginal tear, which the nurse explained is uncommon in females of the victim's age during consensual sex.

{¶ 42} S.W.E. does not challenge the sufficiency of the evidence, and on this record we conclude that, if believed, the evidence was sufficient to establish the force element. The question that S.W.E. raises is whether the evidence showing the absence of force was more persuasive than the evidence showing the use of force. The answer depends on who one believes—S.W.E. or the victim. We are required to give substantial deference to the trial judge, who acted as the trier of fact and had the opportunity to see and hear the witnesses in judging their credibility. As we have said, "[t]he trier of fact is better situated than an appellate court to view witnesses and to observe their demeanor, gestures, voice inflections and to use those observations in weighing credibility." (Citation omitted.) *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 50 (2d Dist.). "A trier of fact

is free to believe all, part or none of the testimony of each witness." (Citation omitted.) *Id.* We conclude that the weight of the evidence here supported a finding that the sexual conduct was compelled by force.

{¶ 43} We find nothing in the record from which to conclude that the trial judge patently lost his way in finding the victim to be a more credible witness than S.W.E. We conclude that the finding that S.W.E. committed rape was not against the manifest weight of the evidence. This is not the exceptional case in which the finder of fact lost its way.

{¶ 44} The third assignment of error is overruled.

### III. Conclusion

{¶ 45} We have overruled all of the assignments of error. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Marcy A. Vonderwell
Bradley P. Koffel
Hon. Adolfo A. Tornichio