[Cite as *State v. Jordan*, 2017-Ohio-7342.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27208 |
| | : | |
| v. | : | Trial Court Case No. 2012-CR-2285 |
| | : | |
| MCKENNA JORDAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of August, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LORIN J. ZANER, Atty. Reg. No. 0008195, 241 North Superior Street, Suite 200, Toledo, Ohio 43604
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} McKenna Jordan appeals from the trial court's denial, without a hearing, of his petition for post-conviction relief.   For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} This case arises from the rape and sexual battery of a minor by Jordan. Jordan was was indicted on five counts of sexual battery and one count of rape.   He was subsequently convicted of rape and three of the five counts of sexual battery.

{¶ 3} The following facts are gleaned from our opinion in *State v. Jordan*, 2d Dist. Montgomery No. 26163, 2016-Ohio-603, wherein we denied Jordan's direct appeal:[1]

Alice grew up believing that Jordan was her father.   She was only three years old when Jordan began dating her mother, and she could not remember a time when he was not a part of her life.   Alice testified that in December 2011, shortly after she turned 13 years old, Jordan began sexually abusing her on a regular basis.   Usually, Alice would be in her bed at night and Jordan would come into her room, lay down next to her, and begin kissing her neck. He would kiss down her body, from her neck, to her chest, and then to her vagina. Jordan would remove his own clothes and insert his penis into her vagina. When he was done, Jordan would leave without saying anything.

Alice testified that one day she was in her mother's bedroom sitting

---

[1] In our opinion, we utilized "Alice" and "Ian" as pseudonyms for the victim and her brother.

on the bed watching television when Jordan came into the room and sat beside her. Jordan soon began fondling her. He then tied Alice's hands to the bed using some straps. He pulled down his and Alice's pants and put his penis into her vagina. At some point, Ian, her younger brother, walked into the room. He testified that he saw that Jordan had "his private parts out" and that Alice was laying down with her hands tied to the bed. (Trial Tr. 895). Ian said that Jordan "told him to get out because he didn't want to go to jail." (*Id.* at 897). Ian said that he left because he "was afraid he [Jordan] was going to hurt me." (*Id.*). After Ian left, Jordan shut and locked the door. He then unstrapped Alice's arms, took her legs, and swung them over the side of the bed. Jordan then got behind Alice and engaged in anal sex.

The last time that Jordan abused Alice was in July 2012. While watching a movie with Jordan and Ian, Alice became tired and went to bed. Shortly after, Jordan came into her room and began kissing her neck, then kissing and licking her breasts on top of and underneath her bra, then kissing and licking her vagina on top of and underneath her underwear, before inserting his penis into her vagina. After Jordan had finished, and she had cleaned herself off in the bathroom, Alice took the phone to her bedroom and called her grandmother for help. Alice snuck out of the house and into her grandmother's waiting car. They went back to the grandmother's house and called the police. The police told Alice to go to Dayton Children's Hospital, which she did, where a standard rape-kit examination was performed and the clothing that she was wearing—shorts,

underwear, and bra—was collected.

*Id.*, ¶ 3-5.

{¶ 4} On January 8, 2016, while his direct appeal was pending, Jordan filed a petition for post-conviction relief pursuant to R.C. 2953.21. Therein, he sought to vacate his conviction and sentence on the basis that he was denied the effective assistance of counsel at trial. Specifically, Jordan argued that counsel was ineffective because he failed to use a retained expert medical witness to challenge the State's witness who examined the victim and found no visible injuries. Jordan also claimed that counsel was ineffective because he failed to utilize medical research articles provided by the retained expert to impeach the State's medical expert. Jordan also argued that counsel was ineffective because he exposed Jordan's DNA to the clothing evidence thereby contaminating the evidence. Finally, Jordan's petition raised an argument of cumulative error based upon these claimed instances of ineffective assistance of counsel.

{¶ 5} With regard to his first two claims, Jordan argued that the victim, despite her allegation that she had been assaulted at least 50 times, had a normal physical examination. He argues that this belies her claims of sexual assault. Jordan notes that trial counsel retained Dr. Stephen Guertin to review the victim's medical records, and that Guertin thereafter submitted a report to trial counsel in which he opined that the "alleged victim most likely would have had physical evidence/abnormalities/physical findings specific to sexual abuse/activity. In fact, based upon the medical research, there should have been not only an abnormal exam but 2 or more injuires/findings regarding the alleged victim. In regards to the most recent allegation and the fact that the hospital exam was conducted within several hours of the alleged assault, even the most superficial

forms of injury would have persisted beyond the first 24 hours." Dkt. No. 22, p. 5.

{¶ 6} Jordan next argued that trial counsel was ineffective because he permitted the victim's clothing to be exposed to Jordan's DNA after the clothing had already been analyzed and found to have no foreign DNA. Of relevance hereto, a rape evidence kit was collected at the hospital at the time of the July 29, 2012 examination of the victim. The kit, which included the victim's bra, panties and shorts, was submitted to the Miami Valley Regional Crime Laboratory for DNA testing. A DNA forensic scientist examined the underwear only for the presence of semen. When no semen was detected, the underwear was swabbed in the front interior. The forensic scientist did not swab all areas of the panties, but instead swabbed where she believed it most likely to find semen. The swabs were then sent for DNA testing by another forensic scientist. The samples were insufficient and provided no evidence of foreign DNA.

{¶ 7} Thereafter, on July 16, 2013, trial counsel took Jordan to look at the collected evidence. According to Jordan, the clothing was removed from sealed bags by a detective. On October 29, 2014, the rape kit evidence was submitted to the Ohio Bureau of Criminal Investigation (BCI) for re-testing. This testing found the presence of amylase, a protein, on the items of clothing. Samples were taken from these areas and tested for DNA. During the testing a partial DNA profile, from which Jordan could not be excluded, was found on the shorts and panties. DNA consistent with Jordan was found on the bra. Jordan argued that by exposing the clothing to him, trial counsel permitted the clothing evidence to be tainted with his DNA.

{¶ 8} Finally, Jordan raised the doctrine of cumulative error as his final argument in his petition.

{¶ 9} The trial court set February 23, 2016 as the deadline for filing a response to the petition. On March 1, 2016, Jordan filed a motion for summary judgment. Less than an hour later the State filed a motion to dismiss the petition. Upon motion by Jordan, the trial court entered an order striking the State's motion to dismiss as untimely. The trial court also overruled the petition for post-conviction relief without conducting a hearing thereon. Jordan appeals.

## II. Standard of Review

{¶ 10} A post-conviction proceeding is not an appeal from a criminal conviction, Instead, it is a "civil collateral attack on a criminal judgment." *State v. Wells*, 2d Dist. Montgomery No. 22389, 2008-Ohio-4932, at ¶ 11, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). We review a denial of a petition for post-conviction relief for which no hearing was held under an abuse of discretion standard. *State v. Harden,* 2d Dist. Montgomery 23617, 2010-Ohio-3343, ¶ 10, citing *State v. Hicks*, 4th Dist. Highland No. 09CA15, 2010-Ohio-89, ¶ 10 (surveying other Ohio courts). The term "abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 11} R.C. 2953.21(D), provides, in pertinent part, as follows:

Before granting a hearing on a petition filed upon division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all

the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript.

{¶ 12} A petitioner in a post-conviction relief proceeding bears the initial burden of submitting evidentiary documents with sufficient facts to demonstrate a constitutional deprivation, such as ineffective assistance of counsel, that would merit a hearing. *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980), syllabus. Broad conclusory allegations are insufficient, as a matter of law, to require a hearing. *Id.*

{¶ 13} In assessing affidavits that have been submitted with a post-conviction relief petition, the court should give them due deference but may use its discretion to weigh the credibility of the affidavits in deciding whether to accept the statements as true. *State v. Calhoun*, 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999). A petition for post-conviction relief may be properly denied without a hearing where the petition, its supporting evidence, and the record "do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at 289.

### III. Failure to Conduct Evidentiary Hearing

{¶ 14} Jordan's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISMISSED THE APPELLANT'S POST-CONVICTION RELIEF (PCR) PETITION WITHOUT A HEARING, PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH & 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING HIS RIGHTS UNDER ARTICLE I,

SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶ 15} Jordan contends that the trial court erred in dismissing his petition for post-conviction relief without an evidentiary hearing.

{¶ 16} As noted above, Jordan carries the burden to present sufficient facts to demonstrate that he has substantive grounds for relief.   In our disposition of the second and third assignments of error, set forth below, we conclude that Jordan has failed to demonstrate that counsel was ineffective.   And we agree with the trial court's determination that Jordan did not meet the standard for requiring a hearing.

{¶ 17} The first assignment of error is overruled.


### IV. Failure to Use Guertin Testimony/Material

{¶ 18} Jordan's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION AND MISAPPLIED *STRICKLAND* WHEN IT DETERMINED THAT DEFENSE TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO USE DR. GUERTIN AT TRIAL, BY FAILING TO USE THE IMPEACHMENT MATERIALS PROVIDED BY DR. GUERTIN AND THE TESTIMONY CONTAINED THEREIN WOULD NOT HAVE PROVIDED A BASIS FOR ACQUITTAL AT TRIAL PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH & 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING HIS RIGHTS UNDER ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶ 19} In this assignment of error, Jordan contends that the trial court incorrectly

applied the standard for determining whether counsel is ineffective. He further contends that the trial court erred when it determined that counsel was not ineffective with regard to his decision not to present Guertin as a medical expert nor to utilize the "authoritative medical treatises" provided by Guertin to impeach the State's experts.

{¶ 20} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on his claims of ineffective assistance of counsel, Jordan must show that counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced by counsel's deficient performance. *Bradley*, at 142.

{¶ 21} To establish the first prong of ineffective assistance, there must be "a substantial violation of any of counsel's essential duties to his client. *Bradley* at 141. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.* at 142. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *Bradley* at 689.

{¶ 22} To establish the second prong, prejudice, Jordan "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland* at 694

{¶ 23} We begin with Jordan's claim that the trial court did not apply this standard when analyzing his claim that counsel was ineffective. In support, Jordan notes that in

finding counsel was not ineffective in failing to present Guertin as a witness or using the materials he provided, the trial court stated that it was not persuaded such actions "could have changed the outcome of the trial." Dkt. No 32, p. 23.

**{¶ 24}** A "trial court is presumed to know the applicable law and apply it accordingly." *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, 951 N.E.2d 1123, ¶ 32 (12th Dist.). Thus, we presume that that the trial court in this case properly considered and applied the *Strickland* standard. Even without this presumption, we note that Jordan ignores the fact that the trial court set forth the appropriate standard for determining an issue of ineffectiveness of trial counsel at the beginning of the discussion on this issue. The trial court went on to find that counsel's decision not to call Guertin or to use the materials he provided, and to instead rely on cross-examination of the State's witnesses, constituted a legitimate trial strategy. Further, the trial court stated that Jordan failed to demonstrate that trial counsel's "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Dkt. No 32, p. 23. Based upon our reading of the trial court's entire discussion, we conclude that the correct standard was applied.

**{¶ 25}** We next examine whether the trial court abused its discretion in determining that Jordan failed to demonstrate that counsel was ineffective for failing to call a medical expert or by failing to use the materials provided by that expert.

**{¶ 26}** Ohio courts have recognized that a defense attorney's decision to rely on cross examination of a State's witness, rather than calling a defense expert, does not necessarily render his actions ineffective. "The failure to call an available witness whose testimony could acquit the defendant can constitute ineffective assistance of counsel.

Nevertheless, there is a presumption that any challenged action on the part of defense counsel 'might be considered sound trial strategy.' Decisions regarding the calling of witnesses will often fall within the range of acceptably sound trial strategy." *State v. Jenkins*, 2d Dist. Miami No. 2003-CA-1, 2003-Ohio-4428, ¶ 7, quoting *State v. Johnson*, 2d Dist. Montgomery No. 16803, 1998 WL 453768, * 5 (Aug. 7, 1998) (citations omitted). "Since the postconviction petition must clearly allege a factual situation that, if proved at a hearing, would entitle the petitioner to relief, a petition asserting trial counsel's failure to call a witness must demonstrate how the uncalled witness' testimony would have benefitted the defense." *State v. Brant*, 11th Dist. Portage No. 97-P-19, 1998 WL 386183, * 5 (May 22, 1998). "A marginal benefit is not sufficient because * * * the petitioner must demonstrate there is a reasonable probability the outcome of the trial would have been different." *Id.* "Accordingly, the uncalled witness must have been central to the defense, and it must appear reasonably probable that the defendant would not have been convicted if the witness had been called." *Id.*

{¶ 27} Relevant to this issue is the testimony of Lynn Peters, M.D., who examined the victim at Dayton Children's Hospital. Peters testified that she has been a pediatric emergency room physician for 29 years, and that she is board certified. She further testified that she has examined "hundreds" of children regarding allegations of sexual abuse. Tr. p. 1234. She testified that she performed a sexual abuse exam of the victim. She testified that the exam was normal and that she observed no cuts, tears or bruising. She further testified that she very rarely finds visible damage because the vaginal and rectal tissue are flexible. She further testified that she did not perform a colposcopy

when examining the victim.[2] Peters' testimony was limited to her personal observations in her practice as an emergency physician.

{¶ 28} With his petition for relief, Jordan attached the affidavit of Guertin who he contends would have rebutted Peters' testimony that it was rare to find visible damage following sexual abuse. In his affidavit, Guertin avers that trial counsel retained him to review the medical records in the case. Guertin also avers that he provided counsel with a two-page written report of his conclusions and opinions. He avers that in this report he informed trial counsel that, given the facts as asserted by the victim, she "would have most likely had physical evidence/abnormalities supporting sexual assault." Guertin also avers that, within a reasonable degree of medical certainty based upon his training, education, and experience, he "would not have expected to see 'normal' findings if the alleged assault was aggressive, involved any violence, and if it took place within 24-48 hours of the physical exam." He finally avers that defense counsel never contacted him again about testifying and that counsel should have used the research and literature referenced in his report during cross-examination of Peters.

{¶ 29} We have reviewed Guertin's report provided to counsel. It is clear from the report that counsel and Guertin discussed the facts of the case. The report also cites three separate studies upon which Guertin appears to rely. However, Guertin's own report indicates only 74% of teens with histories similar to the victim had abnormal examinations. The report shows that while a high number of teens have abnormal examinations, there are some who do not. Also, a review of the medical study referred to by Guertin, and attached to the petition, states in its conclusion that "these results

---

[2] A colposcope is a magnifying instrument.

present several important challenges for emergency care providers. Clearly, the presence of anogenital trauma suggests that penetration has occurred and implies nothing about consent. In addition, anogenital injury is not an inevitable consequence of sexual assault – the lack of genital injury does not imply consent by the victim or lack of penetration by the assailant." In other words, the study acknowledged that sexual assault victims may not have any visible signs of injury.

{¶ 30} As stated, Peters' testimony was limited to her own experience. And her experience in this area is not rebutted by Guertin's report or cited medical studies. On this basis alone, we cannot say that the trial court abused its discretion in finding that Jordan failed to demonstrate that counsel was ineffective.

{¶ 31} Further, defense counsel presented other experts during the course of the trial. One such expert, Phillip Esplin, testified that he is an expert in the field of forensic psychology and child abuse. While, as Jordan notes, Esplin is not a medical doctor, he does have a Masters and Ph.D., and is board-certified in psychology. The record demonstrates that he has vast experience in the field of child abuse, and has helped create protocols for interviewing abused children. For ten years he worked with the National Institute of Child Health and Develolpment in Bethesda, Maryland in a child witness project that developed methods of obtaining "high quality information" from children who witnessed, or were victims of, crime. He has published 30 peer-reviewed scientific articles and has co-authored a book on child witnesses. In the past he has evaluated more than 100 abused children through an agreement with the U.S. Attorney, and has been involved in some high-profile day care cases involving child abuse allegations. He has taught child sex crime classes to Air Force law enforcement. He

has taught the same classes to police departments and social services personnel in this country as well as Israel and Norway.

**{¶ 32}** During his testimony, Esplin stated that given the circumstances of the victim in this case, he would expect there to be an increased probability of finding residual injuries. This testimony, by a qualified expert, inserts the information that Guertin averred he would provide at trial. And again, although not a medical doctor, Esplin does have significant qualifications in the area at issue.

**{¶ 33}** Based upon the evidence presented in the petition, Peters' limited testimony, Esplin's testimony, and the lack of significant rebuttal provided by Guertin's materials, we cannot say that the trial court abused its discretion in finding that counsel's failure to present Guertin's testimony or research materials does not rise to the level of ineffective assistance of counsel.

**{¶ 34}** Accordingly, the second assignment of error is overruled.

## V. DNA Issues

**{¶ 35}** Jordan's third assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT TRIAL COUNSEL WAS NOT INEFFECTIVE FOR EXPOSING HIS CLIENT'S DNA TO THE COLLECTED EVIDENCE WITH SAID EVIDENCE LATER BEING USED AS "CONCLUSIVE" EVIDENCE OF GUILT, APPLY A WRONG LEGAL STANDARD IN ITS REVIEW THUS, PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH & 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING

HIS RIGHTS UNDER ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶ 36}** Jordan alleges that trial counsel was ineffective because he permitted Jordan to be present during a view of the victim's clothing that had been collected at the time of the hospital examination. Jordan argues that this viewing permitted the clothing to become contaminated with his DNA. In support, he submitted his own affidavit in which he avers that the view was conducted on a hot, humid day, that he was sweating profusely, that his hands were sweaty and he touched the table in the viewing room several times. He avers that no paper or protective covering was on the table. Finally, he avers that the detective conducting the view used the same gloves on each article of clothing, and that she sat the gloves on the table but picked them back up to re-open one item of clothing.

**{¶ 37}** Jordan also submitted the affidavit of a criminal defense attorney who avers that trial counsel was ineffective for permitting the evidence to be opened in Jordan's presence. Also submitted was the affidavit of Greg Hampikian, a Ph.D. expert in genetics, who avers that the amylase testing performed by BCI was outdated. He also avers that the exposure during the viewing of the evidence with Jordan created an unacceptable risk for possible contamination. He finally avers that, in his opinion, the evidence was "unnecessarily tainted." Hampikian's opinion is based, apparently, upon a review of Jordan's affidavit.

**{¶ 38}** Detective Elizabeth Alley conducted the view of the evidence. She admitted that she utilized the same pair of gloves when removing the bra, panties, and shorts from their individual packaging. However, she testified that she was the only one

to touch the evidence and that she did not place it on the table. She further testified that Jordan did not sneeze, cough or otherwise do anything to contaminate the clothing. She testified that had that occurred, she would have documented the occurrence.

{¶ 39} The trial court noted that the issue of the gloves was brought out during Alley's trial testimony, both on direct and cross-examination. Further, the trial court found Hampikian's affidavit speculative, noting that he avers that "[e]ven if the defendant did not contact any surfaces where the evidence was placed, it is possible that his lawyer or the police officer who handled the evidence in the presence of [Jordan] transferred [his] DNA from a surface such as a doorknob." The trial court went on to state, "[t]his Court cannot agree that it was unreasonable for Mr. Lieberman to allow the Defendant to view the clothing evidence in his presence prior to trial. Other than his self-serving affidavit, the Defendant's evidentiary documents submitted in support of his petition do not contain sufficient operative facts to demonstrate a lack of competent counsel and that the defense was prejudiced by counsel's alleged ineffectiveness."

{¶ 40} We agree with the trial court. We cannot say that it was unreasonable for defense counsel to permit his client to view the evidence prior to trial.

{¶ 41} Nor can we say, based upon the materials submitted in support of his petition for relief, that contamination was established as anything other than a mere possibility. Hampikian's affidavit assertion is that Jordan's exposure to the victim's clothing created a risk of possible contamination. This conclusion, especially since it is premised upon Jordan's self-serving affidavit testimony, is not sufficient to undermine confidence in the trial's outcome.

{¶ 42} This conclusion is reinforced by the testimony of Daniel Krane, Jordan's

DNA expert. Krane testified that an amylase test will not detect amylase 455 days (the amount of time that passed between the collection of the victim's clothing and the testing conducted at BCI) later. Krane, from this, opined that subsequent contamination was the more likely explanation of the BCI DNA results. The issue of contamination was presented to the jury, but the jury, nonetheless, found Jordan guilty of the rape count.

{¶ 43} We further note that in his direct appeal, Jordan raised an argument of ineffective assistance of counsel with regard to contamination. In our decision, we stated that any possibility that the evidence was contaminated is an issue going "to the weight of the evidence, not its admissibility." *Jordan*, 2016-Ohio-603, ¶ 52.

{¶ 44} Accordingly, the third assignment of error is overruled.

### VI. Trial Counsel's Reputation

{¶ 45} Jordan's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT USED REPUTATION EVIDENCE THAT IS NOT PART OF THE RECORD ON APPEAL TO DETERMINE THAT TRIAL COUNSEL WAS NOT INEFFECTIVE, PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH & 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING HIS RIGHTS UNDER ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶ 46} Jordan claims the trial court gave inappropriate weight to the reputation of trial counsel when it made its determination that counsel was not ineffective. Specifically, he notes that the trial court made the following statement in its decision:

"Attorney Dennis Lieberman, who has an impressive depth of experience spanning several decades as a criminal trial lawyer, is certainly deserving of this Court's strong presumption that his conduct at issue falls within the wide range of reasonable professional assistance."

{¶ 47} We cannot disagree with the State's contention that this one sentence, in a more than 30-page decision, is anything more than the trial court's acknowledgement of the presumption of competency that is afforded to counsel. Further, it is clear that the trial court's decision in this case was not based upon an inappropriate weighing of counsel's reputation, but rather upon the lack of evidence to support a claim for post-conviction relief. Accordingly, the fourth assignment of error is overruled.

## VII. Jordan's Summary Judgment Motion

{¶ 48} The fifth assignment of error raised by Jordan states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT THE MOTION FOR SUMMARY JUDGMENT FILED BY [JORDAN] TO THE EXTENT OF GRANTING AN EVIDENTIARY HEARING, PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH AND 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING HIS RIGHTS UNDER ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶ 49} Jordan contends that in the absence of a proper response by the State, the trial court abused its discretion by failing to conduct an evidentiary hearing and grant his motion for summary judgment.

{¶ 50} "A defendant is not entitled to a default judgment in post conviction proceedings. The State is not required to file a response to a post conviction petition, and the trial court is not required to consider the State's response, if any, before ruling on the petition." *State v. Kingsolver*, 2d Dist. Greene No. 02CA84, 2003-Ohio-3833, ¶ 9 (Citations omitted). In other words, despite the lack of a response by the State, the trial court must still determine whether Jordan was entitled to post-conviction relief. There is no mechanism for rendering summary judgment in favor of a petititioner unless the requisite evidentiary showing is made. In this case, Jordan failed to demonstrate that he was entitled to relief. Therefore, the trial court did not err in failing to render summary judgment. Further, as already explained, Jordan has not met his initial burden to require an evidentiary hearing.

{¶ 51} The fifth assignment of error is overruled.

## VIII. Cumulative Error

{¶ 52} Jordan's Sixth assignment of error provides:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ACKNOWLEDGE THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS WHEN IT DECIDED TRIAL COUNSEL WAS NOT INEFFECTIVE AND THERE WAS [SIC] NO GROUNDS SUPPORTING PROSECUTORIAL MISCONDUCT, PREJUDICING THE APPELLANT AND VIOLATING HIS 5TH, 6TH & 14TH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND VIOLATING HIS RIGHTS UNDER ARTICLE I, SECTION 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶ 53} Jordan contends that he was deprived of a fair trial by virtue of the cumulative error doctrine. Although asserted in his assignment of error, Jordan does not make any argument relating to prosecutorial misconduct.

{¶ 54} Under the doctrine of cumulative error, "[s]eparately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. * * * In order to find cumulative error, we first must find that multiple errors were committed at trial." *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 40. "A conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶ 55} Cumulative error asserting ineffective assistance of counsel would require a determination that while no single act by trial counsel meets the *Strickland* standard, the cumulative effect of counsel's conduct meets the *Strickland* standard. Jordan has not met this standard.

{¶ 56} The sixth assignment of error is overruled.


## IX. Conclusion

{¶ 57} All of Jordan's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Lorin J. Zaner
Hon. Dennis J. Langer