[Cite as *State v. Jordan*, 2021-Ohio-2332.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-62 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-695 |
| | : | |
| ANTHONY DESHAWN JORDAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of July, 2021.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

L. PATRICK MULLIGAN, Atty. Reg. No. 0016118, 28 North Wilkinson Street, Dayton, Ohio 45401
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Anthony Deshawn Jordan appeals from his convictions following a negotiated guilty plea to charges of cocaine possession, marijuana possession, having weapons while under disability, and possession of criminal tools, which were three felonies of the third degree and one felony of the fifth degree, respectively.

{¶ 2} Jordan advances three assignments of error. First, he contends the trial court erred in accepting an invalid guilty plea. Second, he alleges ineffective assistance of trial counsel. Third, he argues that his sentence is contrary to law.

{¶ 3} The record reflects that a grand jury indicted Jordan on the following seven counts: cocaine trafficking, a first-degree felony, with firearm and major-drug-offender specifications; cocaine possession, a first-degree felony, with firearm and major-drug-offender specifications; having weapons while under disability, a third-degree felony; having weapons while under disability, a fourth-degree felony; trafficking in marijuana, a third-degree felony, with a firearm specification; marijuana possession, a third-degree felony, with a firearm specification; and possession of criminal tools, a fifth-degree felony, with a firearm specification. The indictment also contained forfeiture specifications covering cash, two firearms, and two vehicles.

{¶ 4} The charges against Jordan stemmed from the execution of a search warrant at his residence. Police discovered 183 grams of cocaine, 1,447.2 grams of marijuana, two handguns, digital scales, and several cell phones. Following his indictment, Jordan filed and later withdrew a motion to suppress the evidence against him. He subsequently agreed to plead guilty to a reduced charge of cocaine possession as a third-degree felony rather than a first-degree felony. Jordan also agreed to plead guilty to the third-degree-felony charge of having weapons while under disability, third-degree-felony marijuana

possession, and fifth-degree felony possession of criminal tools. He additionally agreed to forfeit the items listed in the indictment. In exchange, the State agreed to dismiss the two drug-trafficking charges, which were first-degree and third-degree felonies, as well as the fourth-degree felony charge of having weapons while under disability. The State also agreed to dismiss all firearm and major-drug-offender specifications. Finally, the parties agreed to a sentence of at least six years in prison with the State being allowed to request a longer term. At the conclusion of a plea hearing on August 6, 2020, the trial court accepted Jordan's plea, made findings of guilt, and ordered forfeiture of the items at issue.

{¶ 5} Following a presentence investigation, the matter proceeded to a sentencing hearing on October 19, 2020. After hearing from respective counsel and Jordan, the trial court imposed an aggregate prison term of nine years. In support, it reasoned:

> As part of this negotiation, Count 1 is being dismissed, as trafficking in cocaine, a felony of the first degree with a one-year firearm specification and a major drug offender specification.

> Count 2, possession of cocaine, which was filed as a felony of the first degree, was amended to a felony of the third degree, and also had a firearms specification and a major drug offender specification, both of which were dismissed. Count 6, possession of marijuana, a felony of the third degree, the defendant pled guilty to but that was with the firearm specification being dismissed. Count 7, possession of criminal tools. He pled to that offense but, again, the firearms specification was dismissed.

> At the time of the defendant's arrest he was employed through AMPM Temporary Services, worked approximately one month. By trade,

he's a barber. At the time of these events going down [police] seized $13,630 in U.S. currency from the defendant's residence.

The court has considered the record, oral statements and purposes and principles of sentencing under [R.C.] section 2929.11, the seriousness factors under 2929.12, as well as recidivism factors under 2929.12, at all times trying to determine a disposition that would meet the overall guidelines punishing the defendant and protecting the public from future crime by the defendant and others.

The court finds the following factors are applicable to this case and this defendant: The offense—offense appears to have been committed as part of an organized criminal activity. I find no factors that would indicate any of these offenses were less serious than that normally constituting that offense.

As to recidivism factors, there was prior adjudications of delinquency. He was not rehabilitated to a satisfactory degree after the prior adjudication. He has a history of criminal convictions and has not responded favorably to sanctions previously imposed on all of those convictions. I find no genuine remorse. I find no factors indicating recidivism is less likely. There's no military service record to consider. And the defendant scored very high on the Ohio risk assessment survey.

[Section] 2929.12, as far as mandatory community control, is not applicable. The defendant may very well be an addict, maybe had problems in his life regarding his own issue with drugs, but did he ever stop to consider

the lives that his drug dealing have had—imposed upon other—problems with other people's lives that were enhanced by his making money off selling drugs? How many other lives have been ruined? How many families have had to deal with an addict who can't control his or her life? The defendant was one of those people selling drugs. So I consider the defendant's problem, but I also take time to consider the victims.

It is the order of the court defendant shall serve a prison term of 36 months on Count 2, a prison term of 36 months on Count 3, and a prison term of 24 months on Count 6, a prison term of 12 months on Count 7. These terms will be run consecutively with each other. He's to receive jail time credit for two days.

The court finds consecutive sentences are necessary to protect the public from future crime by the defendant and others. Consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and the danger that he poses to the public. The defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the defendant.

(October 19, 2020 Transcript at 7-11.)

{¶ 6} The trial court also imposed a fine and ordered forfeiture of the items specified in the indictment. This appeal followed.

{¶ 7} In his first assignment of error, Jordan challenges the knowing, intelligent, and voluntary nature of his guilty plea. He advances three arguments. First, he contends the trial court incorrectly advised him that he could face a driver's license suspension of

six months to five years on counts two, three, and six, whereas the possible suspension applied only to counts two and six. Second, he claims the trial court addressed the firearm and major-drug-offender specifications and, in so doing, confused him by failing to clarify that the State was dismissing those specifications and that they would be presented to a jury only if he elected to proceed to trial. Third, he argues that the trial court failed to advise him that a guilty plea would waive all issues on appeal except jurisdictional issues and the validity of the plea. In particular, Jordan contends he was not told that a guilty plea would waive his ability to challenge the withdrawal of his motion to suppress and the validity of search warrants.

{¶ 8} To "satisfy the requirements of due process, a plea of guilty * * * must be knowing, intelligent, and voluntary, and the record must affirmatively demonstrate" as much. *State v. Chessman*, 2d Dist. Greene No. 03-CA-100, 2006-Ohio-835, ¶ 15, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A trial court accordingly "must comply with Crim.R. 11(C)" before accepting a plea. (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6.

{¶ 9} Under Crim.R. 11(C)(2)(c), a defendant must be advised of certain constitutional rights, and strict compliance with this part of the rule is required. *State v. Thompson*, 2d Dist. Montgomery No. 28308, 2020-Ohio-211, ¶ 5. Where a trial court fails to comply strictly with Crim.R. 11(C)(2)(c), the defendant's plea is invalid. *See State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 16; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 31-32.

{¶ 10} Under Crim.R. 11(C)(2)(a), a trial court must determine whether a defendant is "making [his] plea voluntarily, with understanding of the nature of the charges and of

the maximum penalty involved," and Crim.R. 11(C)(2)(b) requires that the court inform the defendant of the consequences of the plea. *See* Crim.R. 11(C)(2)(a)-(b). Given that these parts of the rule relate to non-constitutional issues, the "defendant must affirmatively show prejudice to invalidate [his] plea" where the trial court fails to comply fully with Crim.R. 11(C)(2)(a)-(b). (Citation omitted.) *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 14. To show that he was prejudiced by the trial court's partial noncompliance with Crim.R. 11(C)(2)(a)-(b), the defendant must demonstrate that he "would [not] otherwise have entered the plea." *Thompson* at ¶ 5. Where a trial court completely fails to comply with Crim.R. 11(C)(2)(a)-(b), however, a defendant's plea should be invalidated on appeal, and the defendant need not show prejudice. *Dangler* at ¶ 14.

{¶ 11} Here Jordan's argument about the driver's license suspension implicates Crim.R. 11(C)(2)(a), which obligated the trial court to inform him about the maximum penalty involved. The trial court advised Jordan that he faced a potential driver's license suspension of up to five years on three charges to which he was pleading guilty. In reality, the possible suspension applied to only two of the charges. Nevertheless, the trial court also made clear that driver's license suspensions could not be ordered to run consecutively. The trial court correctly told Jordan that if it imposed consecutive sentences on the counts he faced a maximum driver's license suspension of five years. (Plea Tr. at 11.) The trial court ultimately imposed no driver's license suspension in its October 22, 2020 judgment entry. On this record, we find partial compliance with Crim.R. 11(C)(2)(a) and no conceivable prejudice to Jordan given the trial court's failure to impose any suspension.

{¶ 12} We likewise find no merit in Jordan's argument that the trial court invalidated his plea by addressing the firearm and major-drug-offender specifications. The trial court reviewed with Jordan the nature of the charges and specifications if he went to trial. The trial court also reviewed the charges to which he was pleading guilty under the plea agreement and the nature of the forfeiture provision. (Plea Tr. at 14-18.) At the conclusion of the trial court's explanation, defense counsel confirmed that Jordan understood "the nature and elements of the offenses to which he's pleading guilty and the elements of the offenses that would have to be proven if he were to go to trial[.]" (*Id.* at 19.) The record does not suggest that Jordan was confused by the trial court's explaining what would have to be proven if he went to trial. The trial court complied with Crim.R. 11(C)(2)(a), and Jordan has not shown any prejudice.

{¶ 13} Finally, we reject Jordan's argument about the trial court's failing to tell him a guilty plea would waive his ability to challenge the withdrawal of his motion to suppress and the validity of search warrants. The trial court was not required to provide this information. The fact that a guilty plea waives a defendant's right to argue a suppression motion on appeal is not one of the matters a trial court is obligated to address under Crim.R. 11(C). *State v. Hatton*, 2d Dist. Montgomery No. 21153, 2006-Ohio-2670, ¶ 6; *see also State v. Reynolds*, 12th Dist. Madison No. CA2018-02-005, 2018-Ohio-4942, ¶ 12 ("The failure to inform a defendant that a guilty plea waives certain rights on appeal is not one of the specifically enumerated rights the trial court is required to discuss during the Crim.R. 11 colloquy."). The first assignment of error is overruled.

{¶ 14} In his second assignment of error, Jordan alleges three instances of ineffective assistance of trial counsel. First, he contends his attorney provided ineffective

assistance by withdrawing his suppression motion. Second, he claims his attorney failed to investigate or to present any mitigating evidence at sentencing. Third, he asserts that his attorney did not provide him with full discovery and did not tell him that a guilty plea would waive his ability to raise suppression issues on appeal.

{¶ 15} When a convicted defendant alleges ineffective assistance of counsel, he must demonstrate counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution and that counsel's errors prejudiced him so as to deprive him of a reliable result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In assessing counsel's performance, "an objective review of counsel's performance must be conducted in light of professional norms prevailing when the representation took place." *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217, ¶ 68, citing *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009); *Strickland* at 688. "Under the deficient-performance prong, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Herring* at ¶ 68, quoting *Strickland* at 689. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted.) *State v. Jordan*, 2d Dist. Montgomery No. 27208, 2017-Ohio-7342, ¶ 21.

{¶ 16} With the foregoing standards in mind, we see no ineffective assistance of counsel. "[A] guilty plea waives all appealable errors, including claims of ineffective

assistance of counsel, except to the extent that the errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea." *State v. Coffman*, 2d Dist. Greene No. 2020-CA-45, 2021-Ohio-1601, ¶ 27, citing *State v. Roebuck*, 2d Dist. Montgomery No. 24799, 2012-Ohio-1859, ¶ 13. This waiver applies to any claimed errors regarding suppression issues, including the withdrawal of a motion to suppress. *State v. Crawford*, 2d Dist. Montgomery No. 27046, 2017-Ohio-308, ¶ 8-9; *State v. McDonall*, 8th Dist. Cuyahoga No. 75245, 1999 WL 1204853, at *3 (Dec. 16, 1999); *see also State v. Huddleson*, 2d Dist. Montgomery No. 20653, 2005-Ohio-4029, ¶ 14 ("Since [the defendant] pled guilty to the charged offenses, he has waived any argument that his attorneys were ineffective in not filing a motion to suppress.").[1] Jordan has not demonstrated that defense counsel's withdrawal of the motion precluded him from entering a knowing, intelligent, and voluntary guilty plea. The validity of the plea is governed by Crim.R. 11, and Jordan has not identified any deficiencies under the rule that would render his plea invalid.

{¶ 17} Although Jordan attempts to argue the merits of the withdrawn suppression motion, his guilty plea precludes him from doing so. In any event, Jordan's argument lacks merit. The sole basis for the one-page motion was that the State lacked a valid search warrant. (March 3, 2020 Suppression Motion.) The motion itself did not elaborate on this assertion. Defense counsel moved to withdraw the motion without explanation on May 7, 2020. The trial court sustained this motion.

---

[1] Although *Huddleson* involved failure to file a suppression motion and the present case involves withdrawal of such a motion, the two cases are analogous. Once defense counsel withdrew Jordan's motion to suppress it was as if no motion had been filed.

{¶ 18} The pertinent search warrant affidavit was based on information obtained through police investigation as well as information obtained from three confidential sources.[2] On appeal, Jordan reasons that the affidavit was fatally defective because it failed to refer to the second and third confidential sources as "reliable" or "credible." He also argues that the second and third confidential sources provided information that was based "heavily on hearsay conversations with other people[.]"

{¶ 19} Having reviewed the affidavit, which accompanies the presentence investigation report, we believe defense counsel reasonably could have concluded that it was sufficient to support the issuance of a search warrant. Through their own investigation and information obtained from the first confidential source, who was described in the affidavit as having proven "reliable" in the past, police identified Jordan as an associate of a known drug trafficker. They also determined his place of residence and where he worked as a barber. Police obtained a picture of Jordan in a vehicle with the known drug trafficker, and they obtained text conversations between the two men. They also discovered that the drug trafficker regularly was in the immediate vicinity of Jordan's house.

{¶ 20} The second confidential source reported drug activity at Jordan's house. This source also reported having heard that Jordan was "one of the biggest drug dealers in Springfield." The third confidential source reported that Jordan was selling "ounce amounts of cocaine and crack/cocaine." This source provided the name of Jordan's girlfriend and one of his customers. This source also reported personally seeing Jordan

---

[2] Although police obtained several search warrants, the drugs and other items underlying the charges against Jordan were found in his home. Therefore, our analysis will focus on the search warrant affidavit pertaining to his home.

in possession of more than $15,000. This source reported having spoken to someone who had seen $100,000 in Jordan's house. Finally, this source reported personally seeing Jordan conduct a hand-to-hand drug transaction.

**{¶ 21}** Through their investigation, police obtained a letter from a prison inmate identifying Jordan and his residence as a place to purchase drugs. After obtaining this letter, police conducted a "trash pull" at Jordan's residence. While searching a trash bag, they found latex gloves and a baggie containing what was confirmed to be cocaine residue. A second trash pull at a later date resulted in the discovery of baggies that appeared to have been rinsed and a baggie containing a small piece of cocaine. While searching the trash on that occasion, police detected a strong odor of marijuana coming from the trash bag.

**{¶ 22}** In light of the foregoing information, defense counsel reasonably could have believed that the search warrant affidavit sufficiently established probable cause. Although the affidavit did not explicitly refer to the second and third confidential sources as "reliable" or "credible," the two trash pulls corroborated these sources' allegations of drug activity. *Compare State v. Glynn*, 2d Dist. Greene No. 2020-CA-13, 2020-Ohio-4763, ¶ 19-24 (finding an affidavit sufficient even though it failed to state that a confidential source was "reliable" where independent police investigation corroborated the source's information). In addition, not all of the information provided by the second and third confidential sources was hearsay. Significantly, the third confidential source reported seeing Jordan in possession of more than $15,000 and seeing him conduct a hand-to-hand drug transaction. But even disregarding all of the information provided by the second and third confidential sources, defense counsel reasonably could have believed that the

remainder of the affidavit sufficiently established probable cause. Therefore, the decision to withdraw the suppression motion was a strategic matter within counsel's discretion.

{¶ 23} As for Jordan's argument that his attorney failed to investigate or to present any mitigating evidence, we have recognized that defense counsel does "not have an affirmative obligation to file a sentencing memorandum[.]" *State v. Olsen*, 2d Dist. Montgomery No. 28011, 2019-Ohio-568, ¶ 13. We noted in *Olsen* that defense counsel may elect only to advocate orally at the sentencing hearing. *Id.* Although Jordan complains that his attorney made only a "brief statement" at sentencing, we see no ineffective assistance. Jordan notes that his attorney neglected to mention his drug addiction. He acknowledges, however, that the State itself brought this fact to the trial court's attention and that evidence of his drug addiction accompanied the presentence investigation report. Jordan also challenges defense counsel's treatment of his criminal history, which counsel described as stemming from his "childhood" and "learning the streets." (Sentencing Tr. at 6.) Jordan has failed to demonstrate what else defense counsel could have said, and the remarks by counsel fell within the realm of reasonable strategy. As for Jordan's claim that defense counsel failed to present any "mitigation" regarding his criminal history, the record does not reveal what investigation defense counsel conducted or what mitigating evidence, if any, defense counsel possessed or reasonably could have discovered. Therefore, Jordan's "mitigation" argument fails to establish ineffective assistance of counsel.

{¶ 24} We also reject Jordan's ineffective-assistance argument based on his attorney's alleged failure to share full discovery with him and failure to tell him that a guilty plea would waive suppression issues. As the State correctly points out, the record does

not reveal what discovery defense counsel shared with Jordan or what counsel told him regarding a guilty plea waiving suppression issues. Because these arguments rely on information outside the record, they are not cognizable on direct appeal. *State v. Qualls*, 2d Dist. Montgomery No. 26423, 2015-Ohio-2182, ¶ 15. The second assignment of error is overruled.

{¶ 25} In his third assignment of error, Jordan contends his nine-year prison sentence is contrary to law. He primarily challenges the trial court's imposition of consecutive sentences while also noting that the trial court imposed a maximum sentence for three of his four convictions. Although the trial court made the consecutive-sentence findings required by R.C. 2929.14(C)(4), Jordan claims it impermissibly based those findings on its belief that he was a major drug seller who was involved in "organized criminal activity," as evidenced by the dismissed charges, specifications, and forfeited items.

{¶ 26} Jordan acknowledges that a trial court may give *some* sentencing consideration to allegations forming the basis of dismissed charges. He asserts, however, that a trial court may not give "unlimited consideration" to dismissed charges or base its sentence on a conclusion that a defendant is guilty of more serious charges. Jordan maintains that the trial court improperly did so here. In support of his argument, he relies on *State v. Blake*, 3d Dist. Union No. 14-03-33, 2004-Ohio-1952, and *State v. Fisher*, 11th Dist. Lake No. 2002-L-020, 2003-Ohio-3499.

{¶ 27} Upon review, we find no error in the trial court's sentencing decision. As a threshold matter, the trial court was not required to make any findings to impose statutory maximum sentences. *State v. Clark*, 2d Dist. Champaign No. 2020-CA-19, 2021-Ohio-

1427, ¶ 22. Therefore, to the extent that Jordan's assignment of error briefly mentions that aspect of the trial court's decision, we find no error. We note too that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." (Citations omitted.) *State v. Jones*, Ohio Slip Opinion No. 2020-Ohio-6729, __ N.E.3d __, ¶ 20. These two statutes address the purposes of felony sentencing and factors pertaining to the relative seriousness of a defendant's offense and his likelihood of recidivism. Although the trial court was not required to make findings under these statutes, one of the "seriousness" factors is whether the defendant committed the offense as part of organized criminal activity. *See* R.C. 2929.12(B)(7). The trial court found it applicable, and we do not disagree. But even if we did disagree, "an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's 'findings' under R.C. 2929.11 and R.C. 2929.12." *State v. Hall*, 2021-Ohio-1894, __ N.E.3d __, ¶ 38 (2d Dist.), citing *Jones* at ¶ 42. Nor can we "modify or vacate a felony sentence based upon a finding that the sentence is 'contrary to law' because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12." *Id.* at ¶ 39, citing *Jones* at ¶ 32-39.

{¶ 28} We turn now to the primary issue Jordan raises in his third assignment of error. As set forth above, he argues that the trial court erred in making consecutive-sentence findings based on its belief that he was a major drug seller who in fact was guilty of the original charges in the indictment, several of which had been dismissed along with accompanying specifications pursuant to the plea agreement.

{¶ 29} In appeals "involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings

underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)].' " *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings."[3] *State v. Withrow,* 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.).

{¶ 30} Here the trial court made the findings required by R.C. 2929.14(C)(4), and Jordan does not argue otherwise. As noted above, it stated: "The court finds consecutive sentences are necessary to protect the public from future crime by the defendant and others. Consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and the danger that he poses to the public. The defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the defendant." (October 19, 2020 Sentencing Transcript at 10-11.) The trial court included these findings in its October 22, 2020 judgment entry.

{¶ 31} Jordan's history of criminal conduct certainly supported the imposition of consecutive sentences. The presentence investigation report reflected that his juvenile record culminated in a period of confinement with the Ohio Department of Youth Services. He continued to commit crimes as an adult. Between 1992 and the present, he had been

---

[3] In his assignment of error, Jordan asserts that the trial court's sentencing decision is contrary to law. In the body of his argument, he also argues that it is not supported by the record and that it constitutes an abuse of discretion. For purposes of the trial court's decision to impose consecutive sentences, the standard is whether the record clearly and convincingly fails to support the trial court's findings under R.C. 2929.14(C)(4).

sentenced to prison at least seven times for offenses including aggravated drug trafficking, carrying a concealed weapon, drug abuse, felonious assault with a firearm specification, attempted tampering with evidence, aggravated drug possession, possession of crack cocaine, having weapons while under disability, and possession of cocaine.

{¶ 32} In the present case, Jordan pled guilty to felony offenses of cocaine possession, marijuana possession, having weapons while under disability, and possession of criminal tools. Despite the fact that trafficking charges had been dismissed pursuant to the plea agreement, the trial court explicitly referenced Jordan selling drugs and the impact the drug sales had on his "victims." Therefore, it does appear that the trial court considered drug-selling activity by Jordan when assessing consecutive-sentence factors such as the seriousness of his conduct and the danger he posed to the public. Based on the record before us, however, we see nothing improper about the trial court's determining that the *facts* underlying his possession convictions involved drug sales. Indeed, the record supports no other conclusion.

{¶ 33} We consistently have recognized that " 'the evidence the court may consider [at sentencing] is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt.' " *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 23, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Among other things, a sentencing court "may consider 'hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a [presentence investigation] report.' " *State v. Davis*, 2d Dist. Clark No. 2018-CA-49, 2019-Ohio-1904,

¶ 7, quoting *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12. In *Barnes*, we rejected an argument that the trial court had erred in imposing consecutive sentences based on its consideration of "the facts underlying the offenses to which [the defendant] did not plead guilty[.]" *Barnes* at ¶ 23.

{¶ 34} Here the trial court actually considered the facts underlying the offenses to which Jordan *did* plead guilty. In essence, the trial court found that the nature of his possession of cocaine and marijuana was for purposes of resale rather than for purposes of personal use. The trial court reasonably concluded that this made Jordan's offenses relatively more serious and increased the need to protect the public from future crime. That Jordan possessed cocaine and marijuana for purposes of resale was supported by undisputed facts, including the quantity of drugs found in his house along with multiple digital scales and two handguns, as well as the baggies, latex gloves, and cocaine residue found in his trash. His guilty plea to possession of criminal tools, namely the digital scales, also supported a conclusion that he was using the scales for purposes of weighing drugs to sell. In sentencing Jordan on the possession charges, the trial court was not required to blind itself to the undeniable nature of his possession simply because he had avoided more serious drug-trafficking charges and specifications through a plea agreement.

{¶ 35} Jordan's reliance on the Third District's opinion in *Blake* and the Eleventh District's opinion in *Fisher* fails to persuade us otherwise. In *Fisher*, the defendant was charged with murder but pled guilty to voluntary manslaughter under a plea bargain. In imposing a statutory maximum sentence, the trial court expressed its opinion that the defendant in fact was guilty of murder. While recognizing that a trial court may "consider" a dismissed charge, the Eleventh District reasoned that a dismissed charge should not

be "relied upon" when imposing sentence and that a sentencing court should not "espouse its personal belief regarding a defendant's guilt with respect to that higher charge[.]" *Fisher* at ¶ 24-25. In finding reversible error, the Eleventh District observed that "no facts were presented during the sentencing hearing on which the court could reasonably and legitimately" conclude that the defendant was guilty of murder. *Id.* at ¶ 26.

{¶ 36} In *Blake*, the defendant was charged with four counts of rape and four counts of gross sexual imposition involving two young girls. The State voluntarily dismissed all but one count of rape and one count of gross sexual imposition involving one of the girls. In exchange for the defendant's guilty plea to the remaining gross sexual imposition charge, the State then dismissed the remaining rape charge. The trial court imposed a statutory maximum five-year prison sentence for the gross sexual imposition conviction. In support, the trial court expressed its belief that the defendant had committed all of the charged offenses and that he should be punished for them. On appeal, the Third District cited *Fisher* and noted the absence of evidence that the defendant had committed those other offenses. *Blake* at ¶ 6. The appellate court reasoned that the dismissed charges could not be the sole basis for imposing a maximum sentence. It also reasoned that the trial court effectively had convicted the defendant of those other offenses without a trial.[4] *Id.*

{¶ 37} Upon review, we find *Fisher* and *Blake* to be distinguishable. The fact that

---

[4] We are unconvinced that the trial court's consideration of the seven dismissed charges in *Fisher* when imposing a five-year sentence on the remaining count was tantamount to convicting him of the dismissed charges. If the defendant had been convicted of four counts of rape and four counts of gross sexual imposition involving children under age 13, he would have received more than a five-year sentence.

Jordan possessed cocaine and marijuana for the purpose of resale is supported by much more than the dismissed trafficking charges. As we explained above, the record establishes beyond reasonable dispute that Jordan planned to sell the drugs found in his house. Again, this was made evident by the quantity of drugs, the presence of scales and firearms, the discovery of baggies, latex gloves, and cocaine residue in his trash, and his guilty plea to possession of criminal tools in connection with the scales. Unlike *Fisher* and *Blake*, the record does contain evidence to support the findings underlying the trial court's consecutive sentences. Finally, the trial court did not impose consecutive sentences based solely on its belief that Jordan was a major drug seller. The trial court also considered his extensive criminal record, as set forth in the PSI report. It expressly found that the "defendant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by the defendant." (October 19, 2020 Sentencing Transcript at 10-11.) For the foregoing reasons, we see no error in the trial court's imposition of consecutive sentences.[5] The third assignment of error is overruled.

{¶ 38} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

---

[5] The State asserts that *Fisher* and *Blake* also are distinguishable insofar as they involved maximum sentences imposed based on consideration of the statutory "seriousness" and "recidivism" factors in R.C. 2929.12, whereas the present case involves consecutive sentences imposed under R.C. 2929.14(C)(4). Although we are not entirely persuaded that this is a meaningful distinction, we need not dwell on it because we have found *Fisher* and *Blake* distinguishable for other reasons.

Copies sent to:

Andrew P. Pickering
L. Patrick Mulligan
Hon. Richard J. O'Neill